# Evans's Estate.   Bryan's Appeal.

[Marked to be reported.]

*Widow's election to take against will—Sequestration and marshaling of assets for benefit of disappointed beneficiaries.*

Where a widow elects to take against her husband's will, equity executes the substituted devises and bequests to the widow as a trust in her for the disappointed claimants to the amount of their interest therein, and the court will assume jurisdiction to sequester the benefit intended for her, in order to compensate those whom her election disappoints.

In this case, the court, on distribution of the balance appearing by the executor's first account, sequestered a portion of the fund sufficient to pay the interest on the dower, charged, by the widow's election, upon lands devised, the decree being made subject to the further order of the court.

*Held* that the sequestration was not premature as there was a present disappointment on the part of the devisees, and it was doubtful whether or not there would be any disappointment of the legatees, and a present distribution of the entire fund might, on failure of future assets, render

150      212
210     ¹577

150     212
38SC   ¹500

the court powerless to protect the devisees. Under the present decree, the court can, upon final settlement, adjust the equities between all parties.

*Review of decree of court in collateral proceeding.*

A proceeding in the orphans' court, by which dower is assigned, will not be reviewed on an appeal from a distribution of the assets in the hands of the executor, the decision of the court as to dower being a collateral proceeding from which no appeal was taken.

Argued May 7, 1892.    Appeal, No. 30, Jan. T., 1892, by Jane G. Bryan, legatee, from decree of O. C. Lancaster Co., adjudicating executor's first account.    Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

The facts are stated in the opinion of the Supreme Court.

The auditor, A. F. Hostetter, after stating the facts, said, *inter alia*:

"It is strenuously contended on behalf of the pecuniary legatees under the will, that, even if the devisees can be made whole, it can be done only after they have been first fully paid. Inasmuch as the election of the widow takes away half of the present fund for distribution, and the total of the legacies is far beyond the amount of the remaining half, they cannot be fully paid out of this fund.    The disappointed devisees would in this way be ruled out of this distribution.    This is the executor's first account.    There are yet personal assets in his hands, and also real estate, which is available, if necessary, to satisfy the claims of those whose rights are superior to the residuary legatees. But even as to these the devisees would be dependent on the contingency of there being a surplus above the legacies on the view taken by the legatees.

"This view proceeds upon the theory that the legacies stand upon higher ground than the devises.    But the general rule is, that 'equality is the highest equity.'    And while a pecuniary legacy may be exempt from abatement, as in the case of a wife or child destitute of other provision, or of a legacy given in lieu of dower, or of a preference manifestly intended, yet these are exceptions dependent on peculiar instances and attended with strong expressions of intention: Duncan v. Alt, 3 P. &. W. 382.

"The case of Bard's Estate, 58 Pa. 398, which, according to its syllabus, would seem to sustain a preference of legacies as

over devises, was really decided on the ground that there was a manifest preference expressed in the will for the pecuniary legatees. The doctrine of our later Pennsylvania cases is, that the abatement of devises and legacies is always a question of intention to be gathered from the will. And this, we think, applies as well to abatement among each other as for the payment of debts: Hallowell's Estate, 23 Pa. 223 ; Sandoe's Ap., 65 Pa. 316 ; Grim's Ap., 89 Pa. 333.

" In the present case there is no preference whatever to be deduced from the will in favor of the legatees, or any individual among them. They are all simply general pecuniary legacies, and there is nothing to show that the testator meant any more certainly that they should take without abatement, than that the devisees should take without encumbrance ; hence the general rule must prevail.

" The specific devisees will, therefore, be permitted to come in upon the present fund. No more, however, is claimed for the devisees than that, to the extent of their just demand for relief, they shall be permitted to come in upon this fund *pro rata* with the legacies. In deciding upon the method to be employed to work out the equity of the devisees, the auditor has been unable to get help from any of the cases. It would seem that either of two methods could be employed. Mrs. Evans, the widow, is sixty-four years of age. The natural expectation of her life might be taken and a gross sum equal to the supposed future payment of dower to be made by the devisees on this basis might be awarded them. This, however, would, in the nature of the case, be more or less contingent and speculative. It seems to the auditor that it would be more equitable to all parties interested in the matter that a fund should be set apart, to remain in the executor's hands, such as, at the ruling rate of interest, would produce the amount paid out as dower,—the income of such fund to be paid to the devisees in proportion to dower paid by them, and the arrangement to continue until further or otherwise ordered by the court. This fund would at all times be under the control of the court, and could be so handled as to work out the equities of the case ; and by this plan it would seem that exact justice could be done to all parties in interest. It will, therefore, be adopted.

" The interest for which these devisees are liable to the widow on her dower is computed at six per cent. This would make the annual interest charged on the farms now vested in the daughters of John J. Evans, $313; on the lands devised to Wm. W. Evans' family, $324; on the farm devised to Robert A. Evans, decedent's nephew, $150; and the farm devised to Robert A. Evans, decedent's grand-nephew, $270. As the ruling rate of interest now is about five per cent, the funds for the relief will for the present be computed on this basis; so that they shall respectively produce at this rate the annual interest charged on the several devises.

" The several amounts required, and which will be set apart, are as follows:

For the lands devised to John J. Evans and family,   . $6,360
For the lands devised to Wm. Evans and family,   . . 6,480
For the lands devised to Robert A. Evans' nephew, . 3,000
For the lands devised to Robert A. Evans' grand-nephew, 5,400

                                                   $21,240

" The devisees are, however, also entitled to be made whole for such loss as they have suffered between the time when the dower was fastened upon them and the period at which they will begin to reap the fruits of the arrangement made for their future protection. This part of their loss they will eventually be entitled to receive in cash. The amount thus due up to the present time could be definitely ascertained, and, following the principle adopted as to the rest of their claim, a dividend on this sum, *pro rata* with the legatees, out of the present fund, awarded them; leaving the rest to be made up in future distributions. In strictness, this would be their right now. Inasmuch, however, as it is impossible to foretell exactly when this present distribution, if confirmed, will actually be made, and hence to ascertain the precise period at which the benefits from the fund directed to be invested for these devisees will begin to come, there would still remain a period, running from the present time up to that time, to be provided for in the next distribution. Since this question would, therefore, in any event, have to come up again, we think it better, as a matter of convenience, to leave the whole subject to be disposed of at

that time, when the amount due them can be precisely ascertain-
ed. The only loss to them would be that of interest, which, along
with all other equities, can then be provided for.   The present
fund will, therefore, be distributed without reference to this
part of the devisee's claim, without prejudice, however, to their
right to demand it in full at a future distribution."

Distribution was recommended accordingly, making a divi-
dend of 46.681 per cent to the legatees.   Appellant excepted
to the award made to compensate the devisees.   The court,
PATTERSON, J., dismissed the exception and confirmed the
report.

*Errors assigned* were (1) dismissal of exception and con-
firmation of report, without quoting exception or decree ;
(2) auditor's adoption of orphans' court decree fixing amount
of widow's dower ; his failure to apply the property provided
for widow by will to relief of devisees ; his premature distri-
bution to devisees ; and his omission, from the distribution, of
the rents and profits of the devised real estate, and the value of
the devises.

*D. G. Eshleman* and *A. J. Steinman*, for appellant.—If the
orphans' court had no jurisdiction to ascertain and fix the
widow's dower, none is fixed for which provision can be made
in this distribution.   Want of jurisdiction may be taken advan-
tage of at any stage of the cause : Musselman's Ap., 101 Pa.
165, 169 ; Fowler v. Eddy, 110 Pa. 117 ; Hill v. Tionesta Twp.,
129 Pa. 525.   The common pleas has exclusive jurisdiction in
case of widow who refuses to take under the will ; her dower
is dower at common law :   Shaffer v. Shaffer, 50 Pa. 394.
The Act of April 20, 1869, P. L. 77, was probably intended to
extend the orphans' court jurisdiction to such cases, but it
falls short of its object.   Section 2 gives that court power to
award an inquest to make partition and decree allotments or
order sale and secure the widow's interest.   In this case the
devises were special ; the only thing to be done by the inquest
was to ascertain values and report dower ; the machinery pro-
vided by the Act is inapplicable.   Cf. Torrance v. Torrance, 53
Pa. 505 ; Shumate v. McGarity, 83 Pa. 38.

If the auditor is right he should have resorted to the devises

and bequests to the widow, and not sequestered the fund belonging to the legatees. Future contingencies should not be considered.

Nearly three years' rents, issues and profits of the real estate devised to the widow have been disregarded in the distribution.

The devisees should wait for the second account, not the legatees, who, being first named in the will, most of them being nephews and nieces for whom no other provision is made, and their legacies being payable within one year, should be regarded as favorites: Grim's Ap., 89 Pa. 333; Bard's Est., 58 Pa. 393. The sequestration is premature: Hoff's Ap., 24 Pa. 202, 206; Gallagher's Ap., 87 Pa. 200. The devisees should contribute to the deficiency of the legacy fund in proportion to the value of their devises: Hallowell's Est., 23 Pa. 223.

The proper present distribution would be to take both funds, the cash on hand and the value of the devises to the widow, and distribute them *pro rata*. The dower being half the value, the whole must be $42,480. This added to the balance on hand, $44,769.45, makes $97,249.45, which will produce a dividend of 82.891 per cent. The legatees are entitled to receive this per cent of the fund for distribution, and the remainder should be held for relief of the devisees.

*George Nauman* and *J. W. F. Swift*, with them *Brown & Hensel, D. F. Magee* and *A. J. Eberly*, for appellees.—This court cannot on this appeal review the proceedings in the orphans' court, which are duly authorized by Act of April 20, 1869, P. L. 77, § 2.

If there is any distinction, specific devisees are preferred to general pecuniary legatees.

As to abatement by election of widow: Bard's Est., 68 Pa. 393; Sandoe's Ap., 65 Pa. 314; Gallagher's Ap., 87 Pa. 200; Gallagher's Ap., 76 Pa. 296; Grim's Ap., 89 Pa. 333; Young's Ap., 108 Pa. 17; Ferguson's Est., 138 Pa. 208; Batione's Est., 136 Pa. 307.

The action of the widow diminished appellant's legacy and imposed the burden of the dower charges on appellees. The fund was sequestered for our joint benefit. We might have asked for a specific sum in gross, estimated on the probable duration of the widow's life. An order similar to ours was

made in Gallagher's Ap., 87 Pa. 200.    We asked for no preference, although entitled to it, but came in on the fund *pro rata* with all others who suffer.

The appellees get nothing from the crops.    The tenants get one half, the widow the other half, and the legatees have been allowed interest on their legacies.

OPINION BY MR. CHIEF JUSTICE PAXSON, July 13, 1892.

It is the settled rule in Pennsylvania that where a wife elects to take against her husband's will, equity executes the substituted devises and bequests to the wife as a trust in her for the benefit of the disappointed claimants to the amount of their interest therein, and the court will assume jurisdiction to sequester the benefit intended for the refusing wife in order to secure compensation to those whom her election disappoints : Sandoe's Ap., 65 Pa. 314; Gallagher's Ap., 76 Pa. 296; Young's Ap., 108 Id. 17; Ferguson's Est., 138 Id. 208; Batione's Est., 136 Pa. 307.

This was precisely what was done, as we understand it, by the learned auditor and court below.    The testator died August 28, 1889, leaving a widow but no lineal descendants.    By his will he gave to his widow his household furniture, horses, carriages, etc., $2,500, absolutely, his dwelling-house and the income of $50,000 for life.    He gave a large number of pecuniary legacies which he directed to be paid within one year after his decease.    He then devised three farms to his brother, John James Evans, for life, with remainder to the four daughters of said brother.    He also devised three farms to his brother, William Watson Evans, for life, with remainder to his three daughters.    He also devised a farm to his nephew, Robert A. Evans, and another to a grand-nephew.    These devises are also for life, with remainders over.    He then gave all the rest, residue and remainder of his estate, of every kind, to his brother, John J. Evans, and his sister, Clementina E. Locher, their heirs and assigns, as tenants in common in equal shares.

The widow elected to take against the will, and proceedings were instituted by her in the orphans' court of Lancaster county, to ascertain and fix her dower in the real estate devised by the testator ; and the said orphans' court fixed her dower in the lands specifically devised as aforesaid, as follows :

In the three farms devised to John J. Evans,  .  $5,300

In the three farms devised to W. W. Evans,.  .  5,400

In the farm devised to his nephew, R. A. Evans,  2,500

In the farm devised to his grand-nephew,  .  .  4,500

Making a total of dower assigned      $17,700.

The amount for distribution in the present account was $109,538.90. Of this sum the auditor awarded to the widow $54,769.45, leaving for distribution among the legatees, $54,769.45. Of this latter sum the auditor set apart the sum of $21,240, which he directed to be invested, and the income thereof paid to the respective devisees, whose lands had been charged with dower, until further ordered by the orphans' court.

It was contended by the appellant that the proceedings in the orphans' court were invalid, and that in any event the action of the auditor, and the court below, in relief of the devisees on whose land the dower was charged, was premature ; it being alleged that this was but a partial account, and that these equities should have been arranged upon the final settlement of the estate.

In regard to the first objection, it is sufficient to say that the proceedings in the orphans' court, by which the dower was assigned, are not before us. We cannot, in a collateral proceeding, review a decision of that court from which no appeal has ever been taken.

Nor do we think the order complained of was prematurely made. The election of the widow to take against the will creates an actual, present disappointment on the part of the devisees. The lands which they take under the will are actually charged with the dower. At present there is no disappointment on the part of the legatees. There may or there may not be such disappointment upon the final settlement of the estate. Should there be, the orphans' court, in the exercise of its equity powers, can readjust the distribution of the estate so as to do exact equity to all parties concerned. It will be observed that the order complained of is made only until the further order of the court. It is obvious that had not this sum of $21,240 been set apart now, a state of facts might exist at the final settlement of the estate which would render the court

powerless to protect the devisees.  For if this sum were now distributed to the legatees, and no further assets come into the hands of the executors, no order could be made in relief of the devisees.  If, upon final settlement, the legatees should be disappointed, it will be the duty of the court below to adjust the equities between them and the devisees in such manner that each shall bear his proper proportion of the loss, and no more. We will not now anticipate what may never come to pass.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.