AGNES B. WAKEFIELD *et al.* Appellees, *vs.* HOMER T. WAKEFIELD *et al.*—(JOSEPH C. BEAM, JR., Appellant.)

*Opinion filed December 17, 1912.*

1. WILLS—*rule as to jurisdiction to construe wills involving no trust.* Courts of equity have always had the power to construe wills, but prior to the act of 1911, which provides that such courts may hear and determine bills to construe wills notwithstanding no trust is involved, it was not proper to exercise the power if no trust was involved; but if the power was exercised the decree was not void, but was binding until reversed on appeal or writ of error.

2. SAME—*effect upon contingent remainder where widow relinquishes life estate.* Where real estate is devised to the widow for life with a contingent remainder over, but she elects to take, under the statute, one-half the real estate in fee, the life estate in the other half is relinquished by such election but the contingent remainder is not thereby destroyed.

3. SAME—*rule where a devisee exercises his right of election.* Where a legatee or devisee having a right of election exercises such right, the court will take hold of that which is relinquished, to compensate, as far as may be, the disappointed devisees, and equity will sequester the devise or bequest renounced and apply it in place of the devises or bequests defeated.

4. SAME—*widow's renunciation of will does not destroy the will.* The fact that the widow chooses to renounce the provisions of the will in her favor and take under the statute does not destroy the will nor render any part of the estate intestate, but under the statute legacies and bequests are to be equalized and the property not taken by the widow passes by the will.

5. JUDICIAL SALES—*purchaser at partition sale has a right to rely upon the decree.* A purchaser at a partition sale who is not a party to the record has a right to rely upon the decree and is not required to look beyond the question of jurisdiction, and even if there is error in the decree for which it might be reversed he is entitled to protection.

6. SAME—*court may summarily require bidder to pay his bid.* Where a bidder at a partition sale refuses to comply with the terms of the sale the court may order a re-sale at his risk and hold him liable for any loss, or it may summarily require him to pay the amount of his bid by entering an order to that effect and enforcing such order.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

W. R. BACH, for appellant.

JOHN E. POLLOCK, and BARRY & MORRISSEY, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an appeal from an order of the circuit court of McLean county requiring appellant, Joseph C. Beam, Jr., to comply, within twenty days, with the terms of a sale made under a decree of said court at which he was the purchaser, by paying to the master in chancery the cash payment, with interest from the time when the sale was approved, and executing the notes and a mortgage for the deferred payments or exercising his option to pay all cash, with interest for the same time, and awarding execution for the cash payment in case of default in compliance with the order.

Oscar Wakefield was the owner of lot 7, in block 4, in Evans' addition to the city of Bloomington. He died testate on November 27, 1906, leaving no child or descendants but leaving Agnes B. Wakefield, his widow, and two sisters and one brother, his heirs-at-law. By his will, after making certain bequests of personal property, he gave to his wife, Agnes B. Wakefield, a life estate in all his real and personal property, and by the fifth paragraph of the will he disposed of the residue as follows: "At the death of my wife I direct that $2000 be paid to Albert Wakefield, whom I raised, if he is then living. I give, devise and bequeath the rest and residue of my property, of which my wife is above given the use for life, to the children, then living, of my sister Emma W. Eddy and to the children of my sister Hattie W. Brady, then living, in equal parts or shares, *per capita*. In either case, if at the death of my wife any child of my sister shall be dead but have left a child or children, such child or children shall take among

them, if more than one, the share such parents would have taken if living. If at the death of my wife one of my said sisters shall be dead without issue then surviving, the whole of said property shall pass to the children of the other in the manner above provided. In default of issue of either sister living at the death of my wife,—that is, if both are then dead without issue then surviving,—such property shall go to my next of kin." The widow renounced the provision made for her in the will, and after her renunciation a bill was filed in the circuit court to equalize the legacies and devises, to sequester for the benefit of the remainder-men the widow's life estate in half of the property which she had rejected, and to appoint a trustee to take charge of the same until her death. In 1908 a decree was rendered in accordance with the prayer of the bill, and Louis O. Eddy was appointed trustee to preserve the property, and the income thereof, during the life of the widow. Afterwards Agnes B. Wakefield, the widow, filed her bill in this case to partition the property, alleging that she was the owner in fee simple of an undivided one-half; that the title to the other half was a contingent remainder and that a trustee had been appointed to take charge of it. A decree for partition was entered, and the premises not being susceptible of division, a sale was ordered. The sale was made and appellant became the purchaser for $5600. The master reported the sale to the court and it was approved on March 16, 1912, but the appellant refused to comply with his bid. The master in chancery moved the court for an order compelling the appellant to comply with the terms of the sale, and he objected that the abstract did not show a merchantable title to the property, and that the court had no jurisdiction to order a specific performance of the purchase nor to award execution against him upon failure to pay the purchase price. The court overruled the objections and made the order.

The grounds upon which it is contended that a deed from the master in chancery would not convey a merchantable title to the appellant are, that the court had no jurisdiction to construe the will in the first chancery suit because no trusts were involved; that by the renunciation of the widow her life estate came to an end and the contingent remainder was defeated for want of a precedent estate to support it; and that the decree for partition failed to state where the fee to the undivided half of the premises · not in the widow was then vested, and therefore did not determine the titles of the parties.

Courts of equity have always had power to construe wills, but prior to the passage of the act in force July 1, 1911, providing that such courts may hear and determine bills to construe wills notwithstanding no trusts or questions of trusts are involved therein, (Laws of 1911, p. 253,) it was not proper to exercise the power if no trust was involved. That was because the jurisdiction was a part of the control of courts of equity over trusts, and if only legal titles were involved there was a complete and adequate remedy at law, but a decree construing a will was not void and was binding until reversed on appeal or writ of error. (*Parsons* v. *Millar,* 189 Ill. 107; *Miller* v. *Rowan,* 251 id. 344.) The purpose of the first .chancery suit was to have the court take hold of the interest relinquished by the widow and appoint a trustee to preserve it for the benefit of those who would become entitled to the remainder, and the construction of the will was only incidental to that purpose if it was involved at all. The decree was not void.

Counsel also seeks to apply the rule that in order to have a contingent remainder there must always be a particular estate to support it and the remainder must vest during the existence of the particular estate or at the instant of its determination. From that rule it is argued that the renunciation by the widow of the life estate devised to her left no precedent estate upon which the contingent remain-

der could rest, and therefore it was destroyed. That rule does not apply to a case where a widow renounces the provision made for her in her husband's will, because the fact that she chooses to decline the provisions of the will in her favor does not destroy the will or render any part of the estate intestate, but under the statute legacies and bequests are to be equalized and the property not taken by the widow passes by the will. (*McMurphy* v. *Boyles,* 49 Ill. 110; *Marvin* v. *Ledwith,* 111 id. 144; *Laurence* v. *Balch,* 195 id. 626; *Lewis* v. *Sedgwick,* 223 id. 213; *Dunshee* v. *Dunshee,* 251 id. 405.) The widow having made her election, under the statute, to take one-half of the estate, she relinquished her life estate in the other undivided half, and the rule of equity is, that where a legatee or devisee, having a right of election, exercises the right, the court will take hold of that which is relinquished, to compensate, as far as may be, the disappointed devisees. Equity will sequester the devise or bequest renounced and apply it in place of the devises or bequests defeated. The rule is stated in Pomeroy's Equity Jurisprudence, (vol. 1, sec. 517,) as follows: "A court of equity will then sequester the benefits intended for the electing beneficiary in order to secure compensation to those persons whom his election disappoints. This rule is applied in many of the American cases cited below to elections made by widows in favor of their dower and against the testamentary provisions, whereby the interests of other devisees were disturbed. Such disappointed devisees are held entitled to compensation out of the benefits intended to be conferred by the will on the widow but which she had rejected,"—citing numerous cases. The same rule is stated in the American and English Encyclopedia of Law, (vol. 11, 2d ed. 115,) and has been repeatedly applied by this court. (*Wilbanks* v. *Wilbanks,* 18 Ill. 17; *Carper* v. *Crowl,* 149 id. 465; *Bell* v. *Nye,* 255 id. 283.) The court in the first chancery suit sequestered the life estate in the undivided half of the property rejected by the widow and

appointed a trustee to take charge of it, and the income from it, until her death, which was in accordance with the law and within the jurisdiction of the court.

It is insisted that the court did not find the titles in the decree for partition, but while not strictly accurate in language the findings were sufficient. They were, that Agnes B. Wakefield was the owner of an undivided half of the property; that the other half was a contingent remainder, and that Louis O. Eddy had been appointed trustee therefor. There was no uncertainty as to whom the different parts of the property were to be set off. Even if there had been any error in the decree for which it might be reversed, the appellant, as a purchaser and not a party to the record, would be protected. Section 30 of the Partition act provides that conveyances in pursuance of sales shall operate as an effectual bar against all parties and privies to such proceedings and all persons claiming under them, and it has been held that a purchaser who is not a party to the record has a right to rely upon the decree and is not required to look beyond the question of jurisdiction. *Denk* v. *Fiel,* 249 Ill. 424.

Counsel for appellant contends that he is not subject to the general rule stated in *Chandler* v. *Morey,* 195 Ill. 596, that the purchaser at a judicial sale becomes a party to the sale and if he does not object to the report of sale is bound by it, and the reason given is, that his objection is not to anything contained in the report but that the proceedings antecedent to the sale were defective, and we have ignored that question and decided the case on its merits.

Finally, it is contended that if the appellant had no valid objection, still the court had no power to compel him to comply with the terms of the sale, but the only proper practice is to order a re-sale at the bidder's risk and hold him for any loss. The method insisted upon as the proper one has been followed in different cases and is proper, (*Hill* v. *Hill,* 58 Ill. 239,) but it has been frequently declared

that the court may summarily require the bidder to pay the amount·of his bid, (*Dills* v. *Jasper,* 33 Ill. 262; *Chandler* v. *Morey, supra;*) and in the latter case the court quoted with approval a holding that a bidder may be compelled to complete his purchase by an order of the court and by its process for contempt, if necessary.

The order is affirmed.            *Order affirmed.*