---

(No. 12164.—Reversed and remanded.)
M. P. RICE, Exr., Appellee, *vs.* ELIZA ANN WINCHELL, Appellant.

*Opinion filed October 21, 1918.*

WILLS—*when wife should not be compelled to accept provisions of husband's will.* A wife should not be compelled to accept the provisions of her husband's will and enjoined from renouncing it under the statute, on the ground that the will was one of two mutual wills executed by the husband and wife and was therefore binding on the wife after the husband's death, where the agreement evidenced by the wills is inequitable to the wife in limiting her to a life interest in the husband's property, although they had no children, and in giving her separate property to the heirs of the husband at her death.

APPEAL from the Circuit Court of Fulton county; the Hon. ROBERT J. GRIER, Judge, presiding.

HARVEY H. ATHERTON, for appellant.

MARVIN T. ROBISON, and J. D. BRECKENRIDGE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Fulton county by appellee, as executor of the last will and testament of John Winchell, deceased, against Eliza Ann Win-

chell, widow of said testator, to compel her to accept the
provisions contained in said will and enjoin her from re-
nouncing the will and taking under the statute, the bill be-
ing based on the allegation that it was one of two mutual
or reciprocal wills executed by the testator and appellant,
respectively. The case was referred to a master in chan-
cery, who, after taking the evidence, recommended that the
relief prayed for by the bill be granted. The trial court
overruled appellant's exceptions to the master's report and
entered a decree finding that the will was one of two mutual
or reciprocal wills, and that appellant should be enjoined
from renouncing it and from claiming the rights in her hus-
band's estate which she would have by such renunciation
and an election under the statute. From the finding of that
decree this appeal has been prosecuted.

John Winchell and Eliza Ann Winchell were an aged
couple who lived at the time of his death at Lewistown,
in Fulton county. They had been married about fifty-eight
years and had lived for many years on a farm near Lewis-
town but a few years before the making of these wills had
moved into Lewistown. He was about seventy-eight years
of age at that time and she was about a year younger. They
had each owned a small amount of farm land, which they
sold at or about the time they came to town. Part of her
money was invested in the home where they lived and the
balance mostly in mortgages. A part of his money was in-
vested in a small house and lot and the balance apparently
in mortgages. They each had property at the time these
wills were made, valued at about $3000. There is some
question in the briefs as to whether some of the property
claimed by her did not stand in the name of both of them
as equal owners or joint tenants. There is also some ques-
tion as to whether all the property did not originally stand
in the name of the deceased and that he deeded over part
of it, not many years before the wills were made, to his
wife, but so far as we can judge from the records and

briefs the property was acquired by the efforts of both. February 10, 1914, the deceased sent word by his doctor to appellee, Rice, who was a lawyer at Lewistown, asking him to come to the Winchell home. Rice testified that he went there as requested, and Winchell, in the presence of his wife and with her taking part in the conversation, told him that they wished to make mutual wills and stated how they wished the property disposed of; that he then went to his office and dictated a will on the dictaphone, and that from this two copies were made by his typist, and afterwards, with the changes in the names and gender of the pronouns, were re-copied into two wills; that thereafter, the same day, he returned to the Winchell home, where these wills were executed by Mr. and Mrs. Winchell, respectively. The husband's will was introduced in evidence as probated, and evidence as to the contents of Mrs. Winchell's will was also introduced. The evidence tends to show, without contradiction, that the two wills were identical except as to the names of the testators and the corresponding pronouns, and except that Mrs. Winchell's will provided that after her husband's death the property should go to the heirs of her husband, while the husband's will provided that after the death of his wife the property should go to his heirs. Winchell died June 14, 1915, and his will was duly admitted to probate the following month. Neither the husband nor the wife had any children or descendants thereof, the husband's heirs, besides the widow, apparently being somewhat distant relatives. September 7, 1915, Mrs. Winchell filed in said county court her renunciation of the provisions of the will and her election under the statute, stating that she desired to take her interest in the estate under the statute. (Hurd's Stat. 1917, p. 1078.) The evidence tends to show that in that same month Mrs. Winchell went to attorney Rice's office and demanded her will, which he gave her, and she testified that she destroyed it.

The husband's will directs the payment of all his just debts and funeral expenses and leaves all the rest of the property to his executor in trust, to handle the property for the advantage of the estate, keeping up the repairs, insurance and taxes on the real estate and paying the net income yearly to Eliza Ann Winchell during her lifetime; that at her death, after a public sale of the real estate by the executor, said executor, as trustee, is directed to divide all the property among the heirs-at-law of John Winchell according to the Illinois laws of descent. The will appointed Rice executor and trustee, and contains the following clause:

"*Sixth*—This will is made in consideration of a reciprocal will this day made by my said wife, in and by which she has devised all her estate to the same person as executor, in trust for my use for life, and the remainder to be divided among my heirs-at-law according to the laws of descent of the State of Illinois."

Rice was also made executor and trustee under the will of Mrs. Winchell. Mrs. Winchell's will was signed by her mark in the presence of two witnesses, the same two witnesses also witnessing the husband's will.

Mutual and reciprocal wills have not been extensively treated by the decisions of this or other courts or in the text books. We have discussed and upheld their legality in several cases. (*Gerbrich v. Freitag,* 213 Ill. 552; *Peoria Humane Society v. McMurtrie,* 229 id. 519; *Klussman v. Wessling,* 238 id. 568.) A somewhat lengthy discussion is also found in *Frazier v. Patterson,* 243. Ill. 80, and the difference between joint, mutual or reciprocal wills is explained. For a further discussion, see *Allen v. Bromberg,* 147 Ala. 317; *Carmichael v. Carmichael,* 72 Mich. 76; 30 Am. & Eng. Ency. of Law, (2d ed.) 621; 40 Cyc. 2116. Most of these cases relate to the enforcement of a mutual will, either of the one dying first or of the survivor, and his right to make a later will, rather than dealing with a case such as this, where it is sought to compel the survivor

to accept the provisions of the mutual. will.  In *Edson* v. *Parsons,* 155 N. Y. 555, the court said (p. 566) : "There is no reason in law nor any public policy which stands in the way of parties agreeing between themselves to execute mutual and reciprocal wills, which, though remaining revocable upon notice being given by either of an intention to revoke, become, upon the death of one, fixed obligations, of which equity will assume the enforcement if attempted to be impaired by subsequent testamentary provisions on the part of the survivor.  The proposition is one which may be regarded as having been accepted generally.  (Jarman on Wills, *27; 2 Story's Eq. Jur. sec. 785; Schouler on Wills, sec. 454; *Lord Walpole's Case,* 3 Ves. Jr. 402.)  A court of equity would in such an event proceed upon the ground that the survivor was bound not merely in honor but by his agreement and by the acceptance of the benefit which that agreement procured for him.  *  *  *  But equally would it be the duty of a court of equity to refuse that relief where the agreement sought to be given effect was not certain and definite.  Clearly, it should hesitate to assume the grave responsibility of implying an agreement whose existence depends upon circumstances inconclusive in their nature and permitting an inference either way."  That case also quotes with approval as applying to mutual wills, from *Gall* v. *Gall,* 29 Abb. 19, "that in this class of cases the ordinary rules which govern in actions to compel the specific performance of contracts and which furnish reasonable safeguards against fraud should be rigidly applied.  These rules require the contract to be certain and definite in all its parts, that it be mutual and founded upon an adequate consideration and that it be established by the clearest and most convincing evidence."  These doctrines are substantially in conformity with the rulings of this court in the decisions heretofore cited.  In *Klussman* v. *Wessling, supra,* the court said (p. 572) : "The court must have full and satisfactory proof of the agreement."  The court then goes

on to quote with approval from *Edson* v. *Parsons, supra,* that in this class of cases the ordinary rules applying to actions for the specific performance of contracts should be rigidly applied and that the contract must be certain and definite in all its parts; that it be mutual and founded upon an adequate consideration and that it be established by the clearest and most convincing evidence. The court in that case then goes on to say: "Equity will not grant specific performance of such a contract if it is unconscionable, inequitable or unjust, or unless it is founded upon an adequate, sufficient and fair consideration."

The case at bar rests largely upon the question as to whether a widow can, during the lifetime of her husband, by a mutual will or otherwise, agree to abide by her husband's will and not renounce it, and upon the question as to whether the widow in this case has made a contract to that effect which should be enforced in equity. We have no doubt, under the authorities, that a wife can, during her husband's lifetime, effectively bind herself to accept the provisions of her husband's will and estop herself from renouncing it after his death, but such a contract should be considered by strict rules and should only be enforced upon clear and convincing evidence along the lines heretofore stated.

It is argued strongly by counsel for appellant that Rice, as demonstrated by this record, has acted contrary to his fiduciary relation with Mrs. Winchell; that he has tried not only to deprive her of the benefit of her husband's property, but that he has in every way possible attempted to take her own property from her and has compelled her to spend much of her savings in expensive court proceedings to protect herself; that in the inventory of the husband's estate he listed as property of the husband real estate valued at $1400, the homestead of appellant, when he admits that he knew, as a matter of law, it was the absolute property of appellant; that he also listed certain personal prop-

erty in the same way which has been held by the trial courts
to have been her sole and exclusive property; that he com-
pelled her to go into court to protect her right to this prop-
erty, and not only litigate it in the county and circuit courts
but also take the matter to the Appellate Court when the
trial courts decided against him; that all the testimony in
favor of appellee was given by appellee himself, with prac-
tically no corroboration, and that his testimony should there-
fore be closely scanned; that this record shows that in.this
way he has acted contrary to the rules as to an attorney
furnishing evidence to help himself succeed in a trial, as
laid down by this court in *Grindle* v. *Grindle,* 240 Ill. 143,
and *Wetzel* v. *Firebaugh,* 251 id. 190.

While we do not hold in this case that the record shows
that Rice acted in bad faith, we do think there is some
merit in this criticism of counsel for appellant. Rice, in
his testimony as to what transpired at the house when he
went there to see about the drawing of the wills, stated
that testator Winchell said: "I agree to will all my prop-
erty to her for life and she has agreed to will all hers to
me for life, and at her death my property was to go to my
heirs-at-law, and at my death, if I outlive her, the prop-
erty is all to go to my heirs-at-law," and then added, "Of
course, this property is practically all mine anyhow, and I
want it to go to my side of the house," and that Mrs. Win-
chell assented to this statement, and said that her relatives
had never treated her right and that this property all came
from John's side of the house; that G. W. Camper heard
a part of this talk. Camper, who was one of the subscrib-
ing witnesses, testified that he was present just a short time
when the wills were executed; that he could not say that
he heard any talk between Rice and the Winchells, and that
he did not hear Mrs. Winchell make any statement with
reference to the wills or the property, except that Rice asked
both the testators if they understood, and they assented.
This witness testified that because of her poor hearing.he

did not think Mrs. Winchell was capable of understanding and transacting the ordinary business affairs of life; that she was very old, could not hear well and that Rice signed the will for her; that it was unusually hard to make her understand what anyone was trying to say to her. C. J. Arnett, the other subscribing witness, testified that he heard nothing said at the time the wills were executed as to the provisions of the wills; that, so far as he knew, both Mr. and Mrs. Winchell were of sound mind, but he never had any dealings or transactions with Mrs. Winchell.

Several neighbors of the Winchells testified to having conversations with Winchell as to the provisions of his will, and they understood him to say that he had all his business straightened up and that he had left all the property to Ann during her lifetime. They testified that his wife was present and agreed to this and stated that she had willed everything to John, and one witness named Steve testified that the husband said, (he being in poor health at the time,) "It looks like she was going to get it, don't it, Steve?" All of these witnesses testified that Winchell said that he wanted his wife to have everything she needed during her lifetime, even if it took all of his property. The record shows without controversy that Mrs. Winchell was very hard of hearing and found it very difficult to understand what was said to her, and that Winchell was also very hard of hearing but not so deaf as his wife. Appellant, Mrs. Winchell, testified in regard to the execution of the wills as follows: "I did not understand that the wills were drawn so that after one died the other would only have the income off the other's property. If I went first he would have got mine as long as he lived, and if he went first I would have all of his. I was to have everything. I was to have all I wanted." On direct and cross-examination she stated, in substance, this same thing more than once.

The practical result of carrying out the provisions in the two wills as made would be that Mrs. Winchell would

be considered to have agreed that in case her husband died first she would receive a life interest in his property, which at her age would probably not be worth more than one-fourth of an absolute interest, and would give up her right, under the statute, to claim the absolute title to one-half of all his property after the payment of his debts, and that she also agreed that she would will her property to him for life, and after his death it should go, not to her heirs but to his heirs. It is therefore clear that by taking under the wills as executed she would get less than if the wills had not been made, and in addition she would also agree that her property, subject to his life estate, should go to his heirs. It is manifestly not clear, under the wording of the husband's will, that Mrs. Winchell would have a right to the *corpus* of her husband's estate for her own use, if necessary. Under the wording of the will she only had a right to the net income, annually. Under these reciprocal wills, if they were enforced, the husband would receive practically all the benefits of the transaction and she would receive none. Had he left no will she would receive all of the personal property, one-half of the real estate and dower in the other half, most of his property being personalty. The question as to what is an adequate consideration must depend largely upon the special facts in each given case, but under the reasoning of this court in *Klussman* v. *Wessling, supra,* and that of the other cases heretofore cited, we think the consideration given by these mutual or reciprocal wills to the wife inequitable and unjust, and it necessarily follows that there was no adequate consideration received by her to support an agreement to abide by the provisions of her husband's will.

We do not find from the record that attorney Rice deliberately intended to deceive Mrs. Winchell or acted in bad faith to her or her husband at the time the wills were executed, but we think it is evident that on account of the advanced age of Mrs. Winchell and her husband and her

inability to read and write, and the fact that she did not easily understand or comprehend what was read or said to her, she did not clearly understand what was being done. We are also disposed to believe that the husband did not have a clear idea of the arrangement that had been made, as he told others that she could spend all the property if she needed it to be comfortable. We are of the opinion that the contract as alleged in the bill to have been made, and supported by the testimony of attorney Rice, who was made the executor and trustee under the wills, is of such a nature that it should not be enforced in equity.

Counsel for appellee argue that certain questions urged by opposing counsel cannot be raised because they were not stated in their answer, including the defense of the want of capacity on the part of Mrs. Winchell to execute her will. It has long been the rule in this State that in order to urge a defense in a chancery proceeding such defense should be set up clearly in the answer. (*Chicago, Rock Island and Pacific Railway Co.* v. *People*, 222 Ill. 427, and authorities cited.) We think the defense that Mrs. Winchell did not understand the terms of the will, whether from want of capacity or otherwise, was clearly set up in the answer and urged on the trial below as well as stated in the exceptions to the master's report. We do not think there is basis for the argument of counsel on this point.

While it was the duty of the executor to use reasonable efforts to uphold the will, the trial court should make such orders as to the payment of costs and reasonable attorney's fees out of the estate as shall be equitable to all the interests, in view of all the facts and circumstances surrounding the execution of these wills.

The decree of the circuit court is reversed and the cause remanded for further proceedings in accordance with the views herein stated.  *Reversed and remanded.*