(133 So. 723)

### MERCHANTS' NAT. BANK OF MOBILE et al. v. HUBBARD et al.
### I Div. 624.

Supreme Court of Alabama.
March 19, 1931.

522

Gordon, Edington & Leigh and Faith & Holland, all of Mobile, for appellants.

Stevens, McCorvey, McLcod, Goode & Turner, of Mobile, for appellees.

FOSTER, J.

The Code, § 10593, has the effect of preventing the husband against the dissent of the wife from making provision for her different from her dower rights and distributive share. Her failure to dissent amounts to a forfeiture of such rights. Therefore an agreement on her part, made with her husband prior to his death, in effect that she will not dissent but will accept the provisions of the will, is virtually an agreement that she thereby foregoes her dower and distributive share in his estate in consideration of the provisions of the will.

The rule was stated at an early date in Alabama, and consistently maintained, that a release of dower and distributive share by the wife to the husband either before or during the coverture is void at law. Gould v. Womack, 2 Ala. 83; Blackmon v. Blackmon, 16 Ala. 633; Martin's Heirs v. Martin, 22 Ala. 86, 104; Adams v. Adams, 39 Ala. 274. This is upon the principle "that no right can be barred before it accrues, and no right or title to an estate of freehold can be barred by a collateral satisfaction." Adams v. Adams, supra, 39 Ala. 281. But a majority of the states agree that if a prospective heir accepts certain values and relinquishes his share of the estate of the ancestor, if freely and fairly entered into, it is enforceable in equity at least (28 A. L. R. 428), usually by way of estoppel. 1 R. C. L. 673 et seq.

Upon the basis of some such theory a contract by the widow to release dower and distributive share, made before or during coverture, will be enforced in equity, when "founded on an adequate consideration, fair, just, reasonable, equal in all its terms and parts, and mutual in its operation and legal effect. If in either of these points there be a well-founded objection, the court abstains from interference, leaving the parties to their legal remedies." Barker v. Barker, 126 Ala. 503, 28 So. 587, 588; Gould v. Womack, supra; Webb v. Webb's Heirs, 29 Ala. 588; State ex rel. Minn. Loan & Trust Co. v. Probate Court, 129 Minn. 442, 152 N. W. 845, L. R. A. 1915E, 8; Rice v. Winchell, 285 Ill. 36, 120 N. E. 572; Crownover v. Crownover, 216 Ala. 286, 113 So. 42; note 49 A. L. R. p. 116 et seq.

It also appears to us to be evident that no court should declare an estoppel against a married woman in favor of the estate of her husband depriving her of her share in his estate, by reason of the fact that in his life time she acquiesced in a provision of his will made for her in lieu of dower when that provision falls short of the adequacy of consideration, and in the absence of the circumstances necessary to justify the specific performance of a contract, if the transaction had amounted to a solemn contract. Martin's Heirs v. Martin, supra; Spratt v. Lawson, 176 Mo. 175, 75 S. W. 642; 19 Corpus Juris 500.

We are quite firmly impressed that an estoppel cannot operate to create a binding effect against a party under circumstances which would not sustain a contract if it had been made. A party cannot be estopped in pais when he cannot bind himself by contract. Sims v. United Auto Supply Co., 221 Ala. 383, 129 So. 53; Crosby v. Turner, 200 Ala. 189, 75 So. 937; McIntosh v. Parker, 82 Ala. 238, 3 So. 19; Burroughs v. Pac. Guano Co., 81 Ala. 255, 1 So. 212; Carey v. Hart, 208 Ala. 316, 94 So. 298; Faulk v. Calloway, 123 Ala. 325, 26 So. 504; Corinth Bank & Trust Co v. Pride, 201 Ala. 683, 79 So. 255; Rice v. Winchell, supra; Herman on Estoppel, § 1099.

As applied to this case, we think that the wife should not be estopped at the instance of his estate to claim her dower and distributive share in her husband's estate, because of her assent to an inadequate provision made for her in lieu of them and which is not just, fair, and equitable to her in every respect, and therefore would not support her contract if expressed in due form.

It must also be remembered that the situation involves rights or relations between persons occupying the strictest confidence, and as a transaction inter vivos, in which the husband is presumed to be the dominant party, the burden is upon him or his representatives to show the fairness and justice and adequacy of the provision for the wife.

But whether we treat it as a relinquishment of her dower and distributive share by way of contract or estoppel; or, leaving that out of view, treat it merely as an agreement to acquiesce in the will and not dissent from it in consideration of the husband agreeing to provide for her as therein stated: or on the theory that the husband was induced by her approval to abide by the

provision he had already made, leading to an estoppel from dissent by her, we think the effect of it is controlled by the same principles. On any theory, as we have stated, we think the rule requires that the consideration be adequate, and the entire transaction fair, just, and equitable from the wife's view, or that it was freely and voluntarily entered into with competent independent advice and full knowledge of her interest in the estate and its approximate value, and that the husband or his representatives have the burden in that respect.

The conclusions reached in the case of Gould v. Womack, supra, are numbered and paragraphed separately in Webb v. Webb's heirs, supra. Those numbered 4 and 5 are as follows:

"4. That a provision to bar dower, where there is neither mistake, surprise, nor fraud, need not be as valuable as the dower; but it must not be greatly deficient in value; nor would this court be disposed to institute a nice comparison, especially in a case where, though not fully equal in value to the dower, the amount secured in lieu of it was a competent livelihood.'

"5. That the mere fact that the provision is an annuity, would, of itself, be sufficient to prevent this court from compelling the widow to accept it, in lieu of dower. The law gives her an absolute estate in her portion of the slaves and other personal property of the husband; and it would be doing her great injustice, to require her to accept, in lieu of it, a mere annuity.'"

That numbered 5 was not pertinent in Webb v. Webb's Heirs, supra, so the court finds it unnecessary to approve or disapprove it. But it is the direct question here involved. For whereas her distributive share of the estate is in fact the absolute ownership of all the personalty, and her dower is the use for life of one-half of the realty (there being no children of decedent), the provision in the will for her is merely an annuity beside the homestead, which was devised in fee to her. The codicil makes a change in some insurance in which the wife was already the beneficiary, evidently to effectuate what had been the purpose of decedent—that if she died before he did, her daughter by another marriage would become the beneficiary in it. If this was any, it was certainly a very small consideration. The contingency of decedent outliving his wife was so slight as hardly to be of real importance. He was within a few weeks of his death from an incurable disease, and they had been so advised by physicians. She was much younger and in good health. The annuity to her daughter was a provision which he had made without any discussion with or knowledge thereof by her, and was not to her financial benefit. So

that we inquire whether the income from the property for her life and the insurance provision for the daughter and the Government street residence are fairly adequate and equal to the absolute ownership of all the personalty and the income from half of the realty, and a $2,000 homestead for life, though there shall be deducted the amount of her separate personal estate estimated at $100,000. The real estate, though of large market value, is shown to be of very small income value. That it will be changed into income-bearing property is speculative. To ascertain the present value of an annuity, the calculation takes into consideration a portion of the principal each year sufficient to exhaust it at the end of the period. Whereas the absolute ownership of the principal which bears such annuity not only provides the same amount annually, but at the end of the period it is intact. The difference between the present value of the annuity and the principal of the widow's interest is a matter of calculation, and it is not such a difference as that it can be said to be only "a nice comparison," but it is greatly disproportionate. There is no evidence that she had independent advice, nor that she knew of her right to dissent or the nature and extent of her dower and distributive share. We cannot affirm, from such circumstances, that the consideration was adequate and that it was freely, voluntarily, fairly, and advisedly entered into, even if the circumstances be construed as of the nature of a contract.

We are also persuaded that the facts do not justify the conclusion that there was a contract intended, nor that the husband was led into action nor to abide by his will as written due to the approval of his wife under circumstances which would be inequitable for her now to dissent. There was nothing which looked like a trade, mutually binding, by the husband that he would so provide, by the wife that she would not dissent. It was more like a confidential family conference than an effectual contract. Nothing indicates that her expression of approval was intended to be or was of a contractual nature or induced conduct to the extent that it would be inequitable now to dissent. There was no semblance of a dealing in legal effect. No one would assume that he considered himself bound in any respect. A contract or estoppel must extend beyond such a concept.

We have now reached the question of whether the widow, after her husband died, effectually elected not to dissent prior to the time of filing her dissent in the probate court. On that subject we find that the rules are settled with more or less clearness and certainty. An election does not result from the circumstance that the widow files the will for probate, even if she receives let-

ters testamentary under its terms and proceeds with the administration of the estate; nor from the circumstance that she stated that certain legatees would receive something under it; nor from a bare acquiescence without a full and deliberate and intelligent choice; nor by a mere intention not to do so, as expressed in conversations or by declarations. Eastburn v. Canizas, 193 Ala. 574, 69 So. 459; Reaves v. Garrett's Adm'r, 34 Ala. 558; Adams v. Adams, 39 Ala. 274.

As pointed out in Owens v. Andrews, 17 N. M. 597, 131 P. 1004, 1006, 49 L. R. A. (N. S.) 1072, and the notes, authorities agree that to constitute an election "the acts and declarations relied upon must be unequivocal, and must clearly evince an intention to elect and take under the will, and the choice must be made by the widow, with her full knowledge of her rights and the status of the estate," and that "to make the enforcement of one demand, which is inconsistent with another, a final and binding election to take that and not the other, the party must either be shown to have acted advisedly, with a proper knowledge of all the circumstances, and with a consciousness of the effect of the act relied upon, or the party adversely interested must have so changed his position in reliance upon such action that it would be inequitable to permit the party who has the choice to recede from his former action," and that "the principle of law precluding the revocation of an election is necessarily the doctrine of estoppel, and that there can be no estoppel when there is no injury." In re Moore's Estate, 62 Cal. App. 265, 216 P. 981; Dunn v. Vinyard (Tex. Com. App.) 251 S. W. 1043.

■ If she has made an election unadvisedly, she cannot avoid her choice as long as she retains that which she has received by virtue of such election. Adams v. Adams, supra.

An unadvised election is upon the same basis as an election procured by fraud. It will not be of binding effect in equity, if she restores what she has received under the legacy, and others have not acted upon her election so as to be prejudiced by her dissent made thereafter. 1 Pom. on Eq. § 515 (see page 978); Reaves v. Garrett's Adm'r, supra; Adams v. Adams, supra.

■■ The evidence shows that she has accepted no personal benefit under the will. While in the codicil she was named trustee of a fund set up for an insane sister of testator, and has received sums of money for use under its terms, and has occupied the homestead, these were not personal benefits which are inconsistent with her disaffirmance. The amounts received under the trust were not for her benefit, and she had the right to occupy the homestead regardless of its value until dower was assigned. There has been

no expressed election on her part not to dissent and no element of estoppel or contract occurred after her husband died by which she was prevented from dissenting. We think, therefore, that the assignment of error in this respect is not well taken.

■ The next assignment argued in brief is that the court erred in its ruling as to the effect of the dissent upon the real estate, devised to the widow, and not embraced in the residuary nor other clause of the will. It is conceded by all that the usual effect of a dissent by the widow is simply to annul the provisions of the will in her favor, and that it shall not in any other respect disappoint and nullify its arrangements except as a necessary incident. But it is said in Dean v. Hart, 62 Ala. 308, that what "she renounces, of necessity results to the indemnity of those who are injured by her renunciation." And it is argued that the real estate which she renounces is thereby charged with an equitable claim in favor of the other disappointed legacies, and that such claim takes precedence over the heirs of decedent who would otherwise take this realty as property not devised. For the rule is also clear that, if that equitable claim does not here exist, the realty in question descends to the heirs at law of decedent. Johnson v. Holifield, 82 Ala. 127, 2 So. 753. See Powell v. Pearson, 220 Ala. 247, 125 So. 39, page 44, and citations there noted.

In the case of Dean v. Hart, supra, the devise was of lands to the widow and daughter, for life, and when one died, to the survivor, and on the death of the latter in remainder. The widow dissented. That gave her for life her dower of one-third interest. Under the will she took for life an half interest. After her dissent the question related to a proper disposition of the difference between one-third and one-half or one-sixth. The court said that this of necessity resulted in benefit to the daughter because, had the widow died instead of dissented, the whole estate would have passed to the daughter, under the terms of the will, and it had the effect of accelerating to that extent the time of her enjoyment. This doctrine of acceleration by the dissent of the widow is well supported. 2 Alexander on Wills, § 838; Jones v. Knappen, 63 Vt. 391, 22 A. 630, 14 L. R. A. 293; Latta v. Brown, 96 Tenn. 343, 34 S. W. 417, 31 L. R. A. 840.

■ The authorities also agree that if the widow dissents, "the property given to her by the will is sequestered to compensate those beneficiaries under the will who have been disappointed in their gifts because of the widow's election." 2 Alexander on Wills, § 837; 1 Pom. Eq. § 517; 40 Cyc. 1993; Wakefield v. Wakefield, 256 Ill. 296, 100 N. E. 275, Ann. Cas. 1913E, 414; Hesseltine v. Part-

ridge, 236 Mass. 77, 127 N. E. 429; Jennings v. Jennings, 21 Ohio St. 56; Bebout v. Quick, 81 Ohio St. 196, 90 N. E. 162; In re Evans' Estate, 150 Pa. 212, 24 A. 642.

 The effect of the dissent on this estate is to take out of it as dower, half of the realty and the homestead interest, all for the life of the widow, and all the personalty not used in meeting obligations owing by deceased, including the annuity to the divorced wife which is in the nature of a debt and not a mere legacy, and the cost of administration, etc., less the amount of her personal estate, leaving in the estate the balance of the realty, to wit, one-half, with a remainder in the dower and homestead effectual under the will after the widow's death, and an amount of personalty equal to the separate personal estate of the widow. This situation is likely to affect the ability of the trustee and executor to pay the legacies under item three and beneficiaries under trust number two. To the extent that thereby such ability is affected, the real estate devised in fee to the widow and which she surrenders is by her dissent charged with an appropriation to such deficiency. If with it there is still lacking enough to pay all the legacies and beneficiaries, they should be paid according to their priority of payment under the terms of the will. By its terms the legacies in item 3 take precedence over them all. They are first to be paid and with the balance of the personalty trust No. 2 is set up. The dissent will not prejudice trust No. 1. Trust No. 3 is subordinate to trust No. 2 in respect to all the property of the estate except the realty embraced in trust No. 1. So that when the widow dissents the realty devised to her is charged with the duty to satisfy, first, the legatees who have first claims as provided in item three to the extent that the personalty is not sufficient to pay them, and then to those having next claim as provided in trust No. 2 and lastly to those in trust No. 3.

 But the doctrine of acceleration of the time of the enjoyment of an estate created in a will should be given effect to that part of the realty left after an assignment of dower, and which is included in trust No. 1. That trust embraces all the realty except what is specially devised to the widow. But it is to be terminated at her death. Then it passes under trust No. 3. So that under the rule of Dean v. Hart, supra, and others, when the widow dissents, and takes her dower out of the property included in trust No. 1, the enjoyment of the remainder of such property by trust No. 3 comes immediately into existence, and that part of it assigned to the widow for her dower will come under its operation at her death. As we have said, the purpose of equity is to apply that which the widow releases to the benefit of all disappointed legatees and beneficiaries according to their respective priorities or claims upon such part of such property under the terms of the will. 2 Alexander on Wills 838; 1 Pom. on Eq. § 517, p. 983 (note c).

 But the doctrine of acceleration of the time of enjoyment does not apply if it is apparent from the provisions of the will that the testator did not intend that it should be so upon the happening of such contingency. 2 Alexander on Wills 838. This latter rule may have application in connection with the annuity to the daughter of the widow.

Upon the dissent of the widow, she will be entitled both to dower and a distributive share of the estate. So that the amount of the value of her separate estate must be deducted in making the award to her as required by section 7430, Code. Earnest effort is made to have us modify the opinion in Guice v. Guice, 150 Ala. 552, 43 So. 199, as reaffirmed in Herring v. Elliott, 218 Ala. 207, 118 So. 391, to the effect that this section and section 7429 only apply where there is both dower and a distributive share to be assigned, and not when one or the other is lacking. But we will not discuss that question here, as it is not involved in this case.

 But we are called upon to give a proper construction of section 7430 on a point which has not heretofore arisen. The inquiry is whether the separate estate, when less than the dower and distributive share should be deducted from the dower or distributive share or both, and in what proportion. The statute furnishes no express guide. We find no authority elsewhere in point. We must therefore endeavor to interpret the statute in this respect to effectuate its true purpose and intent. Under her dower right she gets an amount of realty for life. Under her right as distributee she gets the absolute ownership of personalty. Would not a just meaning be that she gets realty to the extent she does not possess realty, and that she gets personalty to the extent in value she does not possess personalty? Not a final result but by way of initial calculation. In other words, if she has personalty more than her distributive share, the difference is to be deducted from her dower rights, and no distributive share is awarded. And so if she has realty of value in excess of dower, the difference comes off the distributive share, and no dower is assigned. If her personalty is less than her distributive share and she has no realty, it is deducted from her distributive share, and so likewise her realty from her dower. If she has personalty less in value than her distributive share, and realty less in value than her dower, the deduction is made respectively.

In the absence of some statute as a guide, or the suggestion of some more just and appropriate construction of section 7430, we

are willing to express the foregoing view for the guidance of the executor or trustee of this estate.

But we are urged to go back to the doctrine asserted in Mueller v. Mueller, 127 Ala. 356, 28 So. 465, repudiated in Guice v. Guice, supra, to the effect that no deduction from the wife's distributive share should be made if there are no children, for in that event, there is no distributive share, but the whole of the personalty is awarded to the widow. We think when a construction of a Code section has been deliberately announced, when directly involved, and has stood without change for many years, and in the meantime the Code section thus construed has been readopted without change, we are bound by such construction of it until the Legislature makes a change. For that reason the other features of the opinion in Guice v. Guice, supra, were considered settled when this Court referred to them in Herring v. Elliott, supra.

The conclusion is that we agree with the decree of the circuit court in holding that Debe Williams Hubbard, widow of decedent, effectually dissented from her husband's will, and is entitled to take what the law allows for her.

We do not agree with the second paragraph of the decree in holding that the premises known as 1060 Government street, Mobile, as described in the will, which were devised to Debe Williams Hubbard, descends by reason of such dissent, to the heirs at law of decedent, but hold that the same should be sequestered to reimburse the legacies injuriously affected by the dissent, (1) for the benefit of the legacies provided in item 3 of the will, and (2) for the benefit of trust No. 2, as set up in the will. And to this extent the decree of the circuit court is modified, and as modified it is affirmed.

Modified and affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.