44 So.2d 435

### DECKER v. DECKER et al.

8 Div. 493.

Supreme Court of Alabama.

Feb. 2, 1950.

Rehearing Denied March 2, 1950.

H. G. Bailey, of Boaz, for appellant.

Mack Killcrease, of Albertville, and Marion F. Lusk, of Guntersville, for appellees.

· SIMPSON, Justice.

This was a bill in equity by the widow of J. A. Decker, deceased, against his heirs and administrator, seeking the allotment of homestead and dower rights in his lands. The widow has appealed, challenging that feature of the final decree which denied her claim of homestead exemption, and the heirs have cross-appealed, assigning as error that feature of the decree favorable to the widow in the matter of dower.

J. A. Decker died August 23, 1945, leaving surviving him his widow, Roberta Decker, and the following children: Jesse Clarence Decker, Carl Decker, Faye Decker Woodham, and Evelyn Ruth Decker. At the time of his death all the children, save Carl, were minors, though the daughter Faye was married. His landed estate consisted of his home place, containing a fraction less than eighty acres, of the opproximate total value of $8,000. Shortly after the death of J. A. Decker, his brother, Frank Decker, at the instance of the widow and heirs, applied for and was granted letters of administration on his estate. The widow and some of the children continued to occupy the home and to work or rent the lands. This arrangement continued until early February of 1947, when the widow announced her intention to remarry and remove to a place to be provided for her by her prospective husband. At her instance, the heirs and the administrator met with her and they formulated and she, with Clarence, Carl, and Faye, the then adult heirs, executed the following agreement:

"We, the undersigned Roberta Decker, widow of J. A. Decker, deceased, Carl Decker, Clarence Decker and Faye Decker Woodham, children of the said J. A. Decker, deceased, all being over the age of 21 years, hereby mutually agree as follows:

"1. That, whereas, the said Roberta Decker is contemplating a remarriage and moving away from the lands belonging to the said J. A. Decker estate, and

"2. Whereas, there is in the hands of the administrator, Frank Decker, the sum of $2200.00, which can be divided among the heirs of said estate without affecting the operation of said lands, it is agreed that the said $2200.00 be divided as follows: $1,000.00 to be paid to the said Roberta Decker, $300.00 to Carl Decker, $300.00 to Clarence Decker, $300.00 to Fay Decker Woodham, and $300.00 to be paid to the other heir, Ruth Decker, who is a minor, as soon as she has reached the age of 18 years and has her disabilities of non-age removed, and ratifies this agreement.

"3. It is further mutually agreed that the home place be rented by said administrator and the proceeds, less the expenses of operation, and the expense of the administration, be divided equally among the said Roberta Decker, Carl Decker, Clarence Decker, Faye Decker Woodham, and Ruth Decker, under the same conditions as set out above regarding the said Ruth Decker: and,

\* \* \* \* \* \*

"5. It is further mutually agreed that in the event the said Roberta Decker should see fit to return to the home place where she now resides, and is a single woman, at the time, she is hereby given the privilege so to do, and in which event she is to re-

ceive the rents from said place, providing her return to said place shall be at the end of a crop year."

As appears, this agreement bears date of February 4, 1947, and within a few days thereafter, February 9th, the widow married one Dalton and removed from the Decker homestead, having received the sum of money mentioned in the agreement, in addition to some other personal property of her deceased husband. The homestead was rented out. There was a mortgage on the homestead, and the decedent owed some other debts. During the period intervening between the death of the decedent and institution of this proceeding by the widow, the administrator, with funds received from the operation of the farm lands, or rentals, augmented by funds in the amount of $700, supplied by the heirs from other sources, discharged all of the indebtedness against the estate. Less than two months after her remarriage and departure from the homestead (March 25, 1947) the widow filed her petition for removal of the administration from the probate court to the circuit court, in equity; and after such petition was granted instituted this proceeding by filing her bill of complaint, praying an accounting by the administrator and the allotment to her and her daughter Evelyn Ruth, still a minor, of a homestead and of dower to herself. The respondents answered, relying upon the agreement hereinabove set out.

Much evidence was offered by both the complainant and the respondents, all of it by deposition. On submission for final decree the trial court reached the conclusion, and adjudged, that the said agreement was ineffectual as an assignment of the widow's right of dower in view of § 46, Title 34 of the Code, prescribing the form of conveyance to relinquish dower, its execution and acknowledgement. The court further found, and adjudged, that the complainant, the widow, had abandoned her right of homestead, and directed that a homestead be set apart to the minor complainant during her minority or until she should marry; decreed that the widow was entitled to dower in the estate of her deceased husband, and directed appointment of commissioners to that end.

The court fell into error in holding the agreement void under Code 1940, Title 34, § 46. That statute relates to the relinquishment of right of dower by the wife, not widow, prescribing that she join with her husband in a conveyance thereof, or that, subsequently she alone execute a conveyance or other instrument so conveying her right, and requiring that her signature to any such conveyance or instrument be attested or acknowledged. These requirements are designed for the protection of the wife's inchoate right of dower. The instrument here involved is, in effect, an assignment of dower after the death of the husband but before its allotment.

It is a settled rule that after the death of the husband and before assignment, while dower is not an interest or estate in realty, it is assignable by way of extinguishing release to the heirs or terretenants.—American Equitable Assurance Co. v. Powderly Coal & Lumber Co., 221 Ala. 280(4), 128 So. 225; Francis v. Sandlin, 150 Ala. 583, 43 So. 829.

And, though the widow's right of dower, until assigned, is an equity of which a court of law does not take cognizance, yet "on the principle that an assignment of a right in action, though not assignable at law, will be protected in equity, a court of equity will uphold the widow's alienation of her dower interest to a stranger, and protect the rights of the alienee, there being a valuable consideration paid, and the absence of fraud, imposition, or undue advantage." Wilkinson v. Brandon, 92 Ala. 530, 9 So. 187, 188; Wilson v. Roebuck, 180 Ala. 288, 60 So. 870; Lester v. Stroud, 212 Ala. 635, 103 So. 692.

So, treating the agreement as an assignment or relinquishment of her dower right to the heirs, its validity is to be tested by its substance rather than its form. That is to say, it will be upheld, in equity, if it is supported by a valuable consideration and was not the result of fraud, imposition, or undue advantage perpetrated in its procurement. Authorities, supra. In determi-

nation of these questions we look to the instrument itself and to the situation of the respective parties as it appears from the evidence.

Aside from the ground of invalidity upon which the trial court predicated its decree as to relinquishment of dower, appellant insists that the agreement as to both homestead and dower is a mere *nudum pactum,* the only consideration moving to the mother being in fact less than that to which she was and is entitled under the statutes; and that since the transaction was between the mother and her children, the relation was confidential and, the burden rested upon the children, the appellees, to establish fair dealing on their part, and an absence of fraud, imposition, or undue advantage operating against the mother.

 As a general rule, it is always presumed that in transactions between parent and child the parent is the dominant party and free from undue influence. The burden rests upon one seeking to show undue influence by the child to overcome this presumption. The presumption may be rebutted by evidence that the parent has become senile, is in bad health, or is in a state of impaired mentality. It is only after the presumption has been rebutted that the burden shifts or devolves upon the child to show that the transaction was fair and the parent acted on independent advice. Hawthorne v. Jenkins, 182 Ala. 255, 62 So. 505, Ann.Cas.1915D, 707; Boatright v. Fennell, 213 Ala. 10, 104 So. 1; Dolberry v. Dolberry, 153 Ala. 434, 44 So. 1018. Here there is no evidence tending to show that the mother labored under any infirmity of mind or body, or that she was otherwise than in the full vigor of one in her situation in life. We find no basis for imposing the burden of proof upon the appellees to sustain the agreement; but rather does it appear that the burden of showing invalidity rested upon the appellant.

 However this may be, we are persuaded that the evidence fails to show any conduct on the part of the appellees of such character as to taint the agreement with fraud or imposition. It cannot be doubted, from a consideration of the whole evidence, that the agreement here involved and the strained relations between the appellant, the mother, and the appellees, her children, arose out of the appellant's contemplated remarriage. Quite clearly it appears that the appellees, the children, looked with disfavor upon their mother's remarriage, and looked with less favor upon the possibility or probability of the new husband being brought to live upon the home place. There is, however, no satisfactory proof that the children, on account of this situation, took any unfair advantage of their mother. On the contrary, it very satisfactorily appears that the mother was, from beginning to end, the actor. She it was who gathered the parties together for an adjustment of their affairs and, in fact suggested the agreement. She made known her firm purpose to remarry. She stated that her prospective husband owned several places, on which she might make a home; that it was her intent and purpose to abandon the homestead of her deceased husband, Decker, and remove to a home to be provided by this prospective spouse. The effect of her agreement was to surrender her rights of homestead and dower, but to keep the property together and to accept in lieu of her statutory rights as widow a proportionate part of the net income from the entire home place. It reserved to her the right to return to the home place, as a single woman, at any time she chose, and to occupy it and have the usufruct thereof. In view of appellant's avowed purpose and intent prior to and at the time of the execution of the agreement of removing to a home to be provided her by her prospective husband, it would appear that the agreement she reached, of having the administrator take charge of the renting of the home place tract and to pay to her the stipulated proportion of the net income, along with her reserved right to return, was of practical advantage to her and amounted to a substantial consideration. As we have shown, the burden of proof was not cast upon appellees to show adequacy and fairness of consideration, but rather rested upon appellant to show the contrary. This burden she has not met. There is no evidential data from which to

appraise the value of the rights she surrendered, and make a comparison thereof with her probable returns from the agreement she has made. But it may not be out of place to advert to the well-settled rule that mere inadequacy, alone, is never sufficient to vitiate a contract or conveyance otherwise valid, and hence that the courts are not disposed to enter upon nice calculations to strike a balance on the one side or the other. Norrell v. Thompson, 252 Ala. 603, 42 So.2d 461, 462. Absolute equality is not to be hoped for, and is seldom attained in men's dealings one with the other. Nor is consideration to be measured in terms of dollars and cents alone; convenience, avoidance of troublesome details and efforts are proper elements. On the whole evidence it may be reasonably inferred that, at the time she entered into the agreement, the appellant had some such considerations in mind. The mere fact that, after her remarriage, she became dissatisfied with the agreement she had made, may have concluded that she might better have made a different arrangement, is no ground for setting aside the agreement solemnly made by the parties.

We conclude that in denying her application for allotment of homestead the decree is due to be affirmed, but in awarding dower it must be reversed. The agreement being valid, appellant was not entitled to have homestead or dower allotted to her. Whatever rights she now has or may have derive from the agreement. That feature of the decree granting homestead rights to the minor daughter is not challenged by any of the parties to the suit. We express no opinion thereon, except to observe that it appears the minority of the daughter has now terminated, and whatever right she received under the decree has likewise terminated.

In view of the fact that the administration of the estate of J. A. Decker is now pending in the court below, and that a prayer of the bill was for an accounting by the administrator, we will remand the cause to the end that the trial court may, on pleadings properly cast and proof offered, dispose of that feature of the suit.

Affirmed in part, reversed and rendered in part and remanded.

BROWN, FOSTER, LAWSON and STAKELY, JJ., concur.