266 So.2d 865

Gertrude COLBURN et al.

v.

MID-STATE HOMES, INC., a corp.

6 Div. 935

Supreme Court of Alabama.

Sept. 21, 1972.

Bill Fite, Hamilton, for appellants.

R. A. Norred, Birmingham, for appellee.

McCALL, Justice.

The chancellor's final decree denied complainants the relief prayed for in their bill of complaint. They appeal from the rendition of that decree.

The appellants, who are husband and wife, filed their bill in equity against the respondent Mid-State Homes, Inc., who is the appellee and was the sole party respondent in the cause. The appellee is the assignee of Jim Walter Corporation, under a written assignment, dated September 7, 1967, of an installment promissory note and real property mortgage, executed to the latter corporation to secure the purchase price of a "shell home." The appellants executed the note and mortgage on August 25, 1967.

The bill charges that the "mortgage is null, void, and of no effect, and complainants deny the due execution of said alleged mortgage." The appellants contend that the agent of the Jim Walter Corporation, who closed the purchase transaction, never explained to them that it was a mortgage that they were executing before him or that he was a notary public engaged in taking their acknowledgments to the mortgage; that he falsely certified that they voluntarily executed the instrument; that it was not proper for him as an employee of Jim Walter Corporation to certify their acknowledgments; that the manner in which the certificate of acknowledgment was executed rendered it ineffectual to convey their homestead rights in the property; and that the actual value of the "shell home" was greatly less than the amount of the indebtedness covered by the mortgage.

In their bill, the appellants pray for an order restraining foreclosure, for a cancellation of the mortgage, and for title to the real property described in the mortgage to be quieted in them.

The answer admits that the appellants own the mortgaged property, but own it subject to the appellee's rights as assignees of the unpaid note and security mortgage. The appellee denies the invalidity of the mortgage.

The mortgage and the acknowledgment thereto purport on their face to be in due form, complete and regular in all particulars, including the subscription to the mortgage by the appellants, and the certification of its execution by the notary public.

Each appellant admits having voluntarily signed before Jim Walter's agent, who is now shown to be a notary public, an instrument that they identified at the trial as the mortgage in question. However, they deny knowing at the time of signing that they were executing a mortgage or that the person before whom they signed was a notary public. The notary public handed the note and mortgage to the appellants separately, at different times and places, for the purpose of having them subscribe their names thereto, and, at his request each signed the mortgage in his presence. They asked no questions concerning the papers. The appellants admit that they were to pay 144 installments of money in consecutive monthly installments of $67.40 each as the purchase price, and the agent had told them

the total purchase price of the house, though they did not recall it at the trial. They might readily have calculated it from information they had by multiplying the number of installments by the amount of each monthly payment. There was testimony by appellant Colburn that Jim Walter Corporation's agent said they wanted five acres as security and he thought he and his wife agreed to that. He further testified that before signing the papers a man came out and surveyed their property, though he could not say whether he paid for the survey or not. What the appellants considered they were signing on the occasion does not appear from the evidence.

After the appellants signed the papers presented to them, Jim Walter Corporation constructed them a house on the five acre tract conveyed by the mortgage.

There is no merit in appellants' contention that the mortgage is null, void, and of no effect.

■ An efficacious acknowledgment not only renders the instrument self-proving, if seasonably recorded, but it also imports a verity against which none can be heard to complain, unless it is for duress or fraud. It is a quasi-judicial, if not judicial, act of an officer, and his certificate cannot be questioned, if his jurisdiction was obtained, except on the grounds above noted. Vizard v. Robinson, 181 Ala. 349, 353, 61 So. 959; Morris v. Bank of Attalla, 153 Ala. 352, 357, 45 So. 219. In Ford v. Fauche, 272 Ala. 348, 351, 131 So.2d 852, 854, it is stated:

"* * * [W]hen a certifying officer acquires jurisdiction by having the grantor and the instrument before him, the resulting certificate of acknowledgment is conclusive of the facts therein stated in the absence of fraud or duress. Weldon v. Bates, supra [229 Ala. 169, 155 So. 560]; Woolen v. Taylor, 249 Ala. 455, 31 So.2d 320. * * *"

To like effect, we find the following statement in Jemison v. Howell, 230 Ala. 423, 426, 161 So. 806, 809, where the court said:

"* * * Moreover, upon the broad ground of public policy, it is the settled rule in this state that, given 'the presence of the officer for the purpose stated, the presence of the instruments themselves, the presence of the grantors for said purposes, and the signing of the papers then and there by them—the notary's certificates of the acknowledgment of the husband and the separate acknowledgment of the wife are not open to impeachment by parol evidence, no fraud or duress having been shown.' American Freehold Land Mortgage Co. v. Thornton, 108 Ala. 258, 19 So. 529, 530, 54 Am.St.Rep. 148; Qualls v. Qualls, 196 Ala. 524, 72 So. 76; Moore v. Bragg, 212 Ala. 481, 103 So. 452, 454. And in Grider v. American Freehold Land Mortgage Co., 99 Ala. 281, 12 So. 775, 42 Am. St.Rep. 58, it was said that this established rule may now be regarded as a rule of property which it would be unwise and unsafe to disturb."

The situation presented in American Freehold Land Mortgage Co. v. James, 105 Ala. 347, 16 So. 887, is quite similar to that now before us. There it was admitted by James and his wife that the notary carried the mortgage first to the wife, who signed it at her home in the notary's presence. Subsequently, the notary carried it to the husband, and he also signed the mortgage in the notary's presence. There was no allegation of fraud or duress, but both swore that they made no acknowledgment of their signatures before the notary and that he did not ask them to make any. They merely signed the paper and handed it back to the notary. The court upheld the acknowledgment as being valid, and said:

"* * * She does admit she signed it in his presence. The officer had jurisdiction of the parties. He had the mortgage with him, and had jurisdiction of the subject-matter, as well as of the person, at the time and place, and certified to facts which he had authority to certify

to, and which it was his duty to certify to. We are of opinion that, under the facts, the certificate cannot be impeached by parol evidence. Meyer v. Gossett, 38 Ark. 377; Johnston v. Wallace, 53 Miss. 331; Scott v. Simons, 70 Ala. 356 [352]; Shelton v. Aultman, 82 Ala. 318, [315], 8 So. 232; Barnett v. Proskauer, 62 Ala. 486; Miller v. Marx, 55 Ala. 322; Grider v. [American Freehold] Mortgage Co., 99 Ala. 281, 12 So. 775; Griffith v. Ventress, 91 Ala. 366, 8 So. 312. * * *" 105 Ala. at 350–351, 16 So. at 888.

To the same effect are the cases of Jinwright v. Nelson, 105 Ala. 399, 17 So. 91, and American Freehold Land Mortgage Co. v. Thornton, 108 Ala. 258, 19 So. 529.

■ We know of no requirement that a notary public must explain to a mortgagor the nature or contents of a mortgage the maker is about to execute. If no duress or fraud has been exercised over the mortgagor, when he signs the mortgage, he acknowledges to the notary public his mental state—that he is informed of the contents of the instrument he is signing. The mortgagor is thereafter presumed to know what it was that he signed. It is well settled in this state that where a party, having the ability to read and understand an instrument, fails to do so, and signs it without reading it, he is bound unless fraud was practiced on him; he cannot avoid the obligations embodied in the instrument by pleading ignorance of its contents. Lester v. Walker, 172 Ala. 104, 55 So. 619; Birmingham Ry., Light & Power Co. v. Jordan, 170 Ala. 530, 54 So. 280; State Bldg. & Loan Ass'n v. Bradwell, 227 Ala. 606, 151 So. 689; Grady v. Williams, 260 Ala. 285, 70 So.2d 267. In such a case, ignorance of the contents is attributable to the party's own negligence.

■ In the instant case, it appears from the evidence that each appellant had ample opportunity to read the instrument in question and to become acquainted with its contents before signing it. The contention that duress or fraud had been practiced on appellants is not supported by the evidence, and it is not alleged that they were misled into believing that the instrument they executed was something other than a mortgage. Therefore, there is nothing from which we can infer that appellants' execution of the mortgage was other than voluntary.

The fact that the mortgagors did not know the official character of Gilbert as a notary public, or that he bore any official character, makes no material difference. In addition to the other known facts which led up to the signing of the mortgage, the mortgagors knew that Gilbert was to return with papers for them to sign and that their signatures would be required to those papers which would be presented to them. See Jinwright v. Nelson, 105 Ala. 399, 17 So. 91. It was appellants' settled intention to execute those instruments, and they voluntarily did so. His authentication of their signatures in the acknowledgment was for the purpose of enabling subsequent proof of execution of the instrument. We can see no reason within the law for their opposition to subsequent proof of that execution.

Aside from the above, it may well be that the relief sought by appellants should be denied for another reason. Although there was no pleading or direct proof on the point, for aught that appears, appellee, Mid-State Homes, Inc., was a bona fide purchaser for value of the installment note and mortgage and would not be affected by the alleged irregularities, if such they were.

The instrument of assignment, which was introduced into evidence, recites that value was paid for the assignment to Mid-State Homes, Inc. And, there were neither allegations in the bill, nor statements in the evidence, to the effect that Mid-State had notice, actual or constructive, at the time of the purchase of the note and mortgage, of any then existing infirmities, defects, or defenses claimed by appellants against the mortgagee. Indeed, it is virtually impossible that appellee could have had any such notice, for appellants made timely pay-

ments under the mortgage without protest as to its validity for over three years (all but a few weeks of which was after the assignment to Mid-State) before any of the defenses involved in this suit were raised.

The Uniform Commercial Code, Tit. 7A, §§ 1–101 through 10–104, which applies in this case, provides in § 3–302(1) as follows:

"(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

▮▮▮▮ The law on the question of whether or not equities and defenses against the mortgagee may be set up against the assignee of the note and mortgage seems clearly settled against appellants. In this state, equities and defenses which would be available against the mortgagee cannot ordinarily be raised against a bona fide purchaser for value before maturity and without notice. And, the holder in due course of a negotiable note secured by a mortgage takes the mortgage subject to only those defenses which could be raised by the mortgagor against the note itself.

In Hawley v. Bibb, 69 Ala. 52, 57, we find the following comment on the subject written by Chief Justice Brickell:

"* * * A bona fide holder of the bill * * * can not be affected by the illegality of consideration, which would render it void as between the immediate parties. Illegality of consideration affects the right and title of bona fide holders, only when by statute the invalidity of the instrument is pronounced, and it is made void in the hands of every holder, whether he has notice of the illegality or not.—Saltmarsh v. Tuthill, 13 Ala. 390.

"This proposition is not controverted, but it is insisted, that though the appellant takes the bill freed from all infirmity because of illegality of consideration, he does not so acquire the mortgage, which was not expressly assigned to him, and which passes as the mere incident to, and security for the bill. But we think that the weight of authority is, that on a bill to foreclose by the assignee of the mortgage debt, no other or further defenses as to the validity of the debt are open, than could be made, if the action were at law upon the debt.—Pierce v. Faunce, 47 Me. 507. It would be rather anomalous, that the appellant should have an unquestioned right to the debt—that in equity and good conscience the appellee should be bound to pay it to him, and yet, that a security for the debt, the mere incident to the debt, should not be enforced."

This court, in Birmingham Trust & Savings Co. v. Howell, 202 Ala. 39, 79 So. 377, made this apt statement:

"'The note in the complaint, having been made payable at a bank, was governed by the commercial law. The purchaser of such a paper, in the usual course of business, before its maturity, for a valuable consideration, having no notice of defenses that existed between the original parties, or have subsequently arisen, as we have frequently held, is a bona fide holder for value, and as such takes the instrument freed from defenses which were available between the original parties.

\*     \*     \*     \*     \*     \*

"'* * * '[A] mortgage to secure such a note follows, and is of the same character as, the note it secures in this respect' * * *.'" Citing Thompson v. Maddux, 117 Ala. 468, 23 So. 157, and Davies v. Simpson, 201 Ala. 616, 79 So. 48.

The following statement, from United States Finance Co. v. Jones, 285 Ala. 105, 107, 229 So.2d 495, seems to be our latest expression on this aspect of the law:

"* * * When a mortgage securing a note is transferred along with the note,

the mortgage follows and is of the same character as the note. Birmingham Trust & Savings Co. v. Howell, 202 Ala. 39, 79 So. 377; Davies v. Simpson, 201 Ala. 616, 79 So. 48."

A few of the many other cases to like effect are: Jackson v. Johnson, 189 Ala. 227, 66 So. 623; Hart v. Adler, 109 Ala. 467, 19 So. 894; Fortson v. Bishop, 204 Ala. 524, 86 So. 399; Singer v. National Bond & Investment Co., 218 Ala. 375, 118 So. 561; Jemison v. Howell, 230 Ala. 423, 161 So. 806.

Therefore, if appellee does have holder in due course status, appellee is immune to the defenses interposed by the appellants for that additional reason.

■ The land herein involved constituted appellants' homestead, and they allege that the law with respect to alienation of a homestead was not complied with when the mortgage was signed. Title to the real property in suit was in the wife. It being her separate property (Tit. 34, § 65, Code, 1940), the provisions of Tit. 7, § 626 of the Code, Recompiled 1958, relating to conveyances of the homestead by a married man do not apply. Broughton v. Broughton, 201 Ala. 311, 313, 78 So. 87.

■ Gilbert's being an agent of the vendor and mortgagee did not disqualify or render him incompetent to take and certify the acknowledgments of the mortgage unless he had a "financial interest" in the conveyance. This is not shown by the record. The case made by the evidence in this respect fails to show that Gilbert, as agent or representative, had any "financial interest in the conveyance"; the facts set forth evidence at most a financial interest in the *transaction, not in the conveyance.* That his compensation, as well as its amount, may have depended entirely upon the effectuation by him of the sale of the "shell home" did not suffice to render his financial interest therein more than secondary and incidental. See Vizard v. Robinson, 181 Ala. 349, 61 So. 959.

■ Further, it does not appear that this objection was raised in the court below. The trial court will not be put in error unless the matter complained about was called to its attention by objection or by other appropriate method. State v. Boyd, 271 Ala. 584, 126 So.2d 225; Rice v. Hill, 278 Ala. 342, 178 So.2d 168; Thompson v. Havard, 285 Ala. 718, 235 So.2d 853.

The appellants acknowledge that Jim Walter Corporation built the house or "shell home" on the five acre tract. They do not complain that the vendor failed to construct the same type of house as selected by them, or that the workmanship was faulty, or that they did not receive exactly what they bargained for in every respect. The appellants simply say that the value of the house they bought is not as great as the amount they agreed to pay for it.

■ The accepted general rule is that the mere inadequacy of consideration, alone, is insufficient to vitiate a contract or conveyance, otherwise valid. Decker v. Decker, 253 Ala. 345, 44 So.2d 435; Drennen Motor Car Co. v. Welded Products Co., 20 Ala.App. 382, 102 So. 600, cert. denied 212 Ala. 335, 102 So. 601.

■ The appellants entered into a contract on August 25, 1967, to pay $9,705.60 for the erection of a "shell home" on their land. They paid the installments, when and as they came due until January 1971, when a dispute arose over a charge for insurance. Now, after adhering to the contract for nearly four years, they attack it for inadequacy of consideration by asserting that the house they bought was only worth $2,-000. We think their complaint on this score comes too late, there being no evidence of fraud. " * * * The slightest consideration is sufficient to support the most onerous obligation; the inadequacy, as has been well said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced. * * *" 17 C.J.S. Contracts § 127, p. 843.

For the reasons stated we are of the opinion that the final decree of the trial court is due to be affirmed. We so hold.

Affirmed.

HEFLIN, C. J., and COLEMAN, BLOODWORTH, and SOMERVILLE, JJ., concur.