348 So.2d 1049 (1977)
Emmett WALKER, Jr., father of Theresa Thomas Walker, a minor, Deceased
v.
Clarence CARDWELL, Administrator of the Estate of Donald Frank Cardwell, Deceased.
SC 1946.
Supreme Court of Alabama.
August 12, 1977.
*1050 Marlin M. Mooneyham, Montgomery, for appellant.
Harry Cole and Thomas C. Sullivan for Hill, Hill, Carter, Franco, Cole & Black, Montgomery, for appellee.
ALMON, Justice.
This is an appeal by the plaintiff in a wrongful death action. Theresa Thomas Walker, age one, was killed in an automobile accident. Frank Cardwell, age twenty-eight, presumably was killed in the same accident. Emmett Walker, Jr., father of Theresa, brought suit for wrongful death against the estate of Donald Frank Cardwell (Clarence Cardwell, administrator) alleging negligence and wanton misconduct. The jury verdict and judgment were for the defendant. The appellant, Emmett Walker, Jr., moved for a new trial contending primarily that the jury verdict was contrary to the evidence. The appellant contends the court erred in not granting a new trial, that closing argument of appellee's counsel was improper, and that a jury charge was incorrect. We affirm.
The accident occurred on the Mobile Highway in Montgomery, Alabama. At this point the four laned highway runs in a north-south direction and has a raised median. The highway is straight and the surface was dry on the day of the accident.
One of the witnesses to the accident observed Donald Cardwell (deceased) proceeding south on the inside northbound lane. He observed the car for about one-half mile drift from one side of the northbound lane to the other. The car almost hit the automobile of an elderly couple. Thereafter, it sideswiped a Price Donut Company truck, and struck the car driven by Jerry Walker in which Theresa (deceased) and Emmett Walker were passengers. Three other witnesses testified similarly. According to a police officer, no alcohol was found in Donald Cardwell's blood.
*1051 The appellee's only defense witness was the father of Donald Cardwell, Clarence Cardwell. Clarence testified that 3 to 5 years previously Donald began having fainting spells. His first was while fueling a plane at Dannelly Field in Montgomery. When Donald would black out, he would become unconscious as if he were sleeping. Donald received medical examinations at Jackson Hospital in Montgomery, the University of New Orleans, the University of Jackson in Mississippi, and later visited Oschner's Clinic in New Orleans three or four times. After the rests his job was changed to ticket agent.
Donald had a prior accident, but his father was not sure it was related to the fainting spells. On at least one occasion, though, he had turned his driver's license in to the State for a year or longer. Donald also had a pilot's license, but no longer flew.
His last fainting spell, to the best of his father's knowledge, was approximately 2 years ago. In July, 1974, a few months before the accident, Donald and his father took a vacation through North Carolina, Tennessee and Georgia, on which Donald drove about three-fourths of the way.
The scope of review regarding the granting of a new trial for insufficient evidence is well stated in Hodges & Company v. Albrecht, 288 Ala. 281, 285-286, 259 So.2d 829, 832 (1972):
". . . We acknowledge that,
"`* * * It is the rule that where the verdict is contrary to the great preponderance of the evidence, defendant, on due motion, is entitled to a new trial, though the court was not in error in declining the affirmative charge. The scintilla of evidence rule does not apply as to the ruling on the motion. [Citations omitted.]'
"However, we also point out that,
"`* * * This court has held many times that verdicts are presumed to be correct and no ground of a motion for a new trial is more carefully scrutinized than that the verdict is against the weight of the evidence. [Citation omitted.] Furthermore, verdicts are presumed correct and the presumption in favor of the correctness of the verdict is strengthened when a new trial is denied by the court. [Citation omitted.] Furthermore, on appeal from a judgment for the plaintiff this court must review the tendencies of the evidence most favorable to the plaintiff allowing such inferences as the jury was free to draw. [Citations omitted.]'
"See, 15A Ala.Dig., New Trial.
"Moreover, this court has held that,
"`* * * "the decision of the trial court, refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust." [Citations omitted.]'
"See 2A Ala.Dig., Appeal and Error."
Part of the jury charge read as follows:
"The Court charges the jury that if you are reasonably satisfied that Donald Frank Cardwell had lapsed into unconsciousness prior to the accident without any warning symptoms, or knowledge that such a condition would occur, then he could not be considered guilty of negligence or wantonness for anything which would have occurred after he lost consciousness."
The question of whether Donald Cardwell lapsed into unconsciousness without prior knowledge was a jury question. We hold that sufficient evidence existed to support the jury's conclusion: no alcohol was found in Donald's blood; he had a history of fainting spells but his last one occurred at least 2 years before the accident; he had driven ¾ of a vacation visiting three states a few months prior to the accident; and his car was seen drifting back and forth down the wrong side of the highway for ½ mile preceding the accident.
During appellee's closing argument, the following transpired:

*1052 "MR. COLE: I think your common sense will tell you that this boy either had a heart attack or was dead when this car crossed that centerline out there that day or_ _ _
"MR. MARLIN MOONEYHAM: Judge, I am going to object to him having a heart attack. I don't think there's any evidence whatsoever that he had a heart attack, and not any inference. I think it's improper for him to argue to the Jury that he had a heart attack.
"THE COURT: I overrule your objection based upon, you know, that it's argument to the Jury and it's the way that Counsel sees it but what Counsel has to say is not evidence. The only evidence that you receive here is the evidence that you receive from the witness stand. What Counsel says is mere argument to you, so I overrule your objections, but I want to instruct you that the only evidence you are to consider is that which you heard here. All right. Go ahead."
Appellant contends that the reference to a heart attack was prejudicial.
In argument to the jury, counsel may not argue as a fact that which is not in evidence, but he may state or comment on all proper inferences from the evidence and may draw conclusions from the evidence based on his own reasoning. Adams v. State, 291 Ala. 224, 279 So.2d 488 (1973). Much must be left to the judgment of the trial court, with presumptions in its favor. To justify reversal, substantial prejudice must have resulted. Id. McLaney v. Turner, 267 Ala. 588, 104 So.2d 315 (1958).
The exact cause of Donald Cardwell's death was not brought out in the testimony. The reference to the heart attack could have meant to infer to the jury that his acts were beyond his control. While the evidence does not directly support the theory of a heart attack, the testimony regarding fainting spells supports the theory that Donald's acts were beyond his control.
In view of the court's instruction, we do not believe the argument was prejudicial under these facts. Rule 45, Alabama Rules of Appellate Procedure.
The jury instructions the appellants contend are in error are as follows:
"The Court charges the Jury that the only damages which can be awarded in this case are punitive damages for the purpose of punishing the deceased, Donald Frank Cardwell, or deterring others similarly situated, unless you are reasonably satisfied from the evidence that the said, Donald Frank Cardwell, should be punished or should be a deterrent for future prevention, then you should not award the plaintiff any damages.
"The Court charges the Jury that the damages to be awarded in this case, if any, are in the nature of a civil fine to be imposed upon Frank Cardwell or his estate. If, after considering all the evidence, any member of the Jury is not reasonably satisfied that such a fine should be imposed, then you should not return a verdict for the plaintiff.
"And, I must also charge you as an add-on to these, it would be for the purpose of punishment in the light of the deterrent in the future."
The first two paragraphs of the part quoted are based on defendant's requested charges numbers 1 and 2. During proceedings in the judge's chambers, appellant's counsel objected to both charges. He wanted the charges to explain that damages are for a punishment and to deter others. Because of the objection, the court agreed to add to the first paragraph, "as a deterrent to others," and to the first sentence of the second paragraph, "as punishment or deterrent." This satisfied the appellant.
The above quoted charges are as the court reporter took them down. In comparing the charges to what was agreed upon, we note that the first addition was properly included. The phrase, "or should be a deterrent for future prevention," was not part of the original written charges. But the second addition was apparently overlooked by the judge as he read the charges. However, after the giving of the oral charge, which included the charges in question *1053 quoted above, appellant specifically stated he did not have any exceptions.
As we view the record, appellant's objections were met; there is nothing for us to review. Griffin v. Respress, 281 Ala. 168, 200 So.2d 469 (1967).
In any case, we believe no prejudice resulted in view of the court's entire charge. Rule 51, Alabama Rules of Civil Procedure; National Distillers and Chemical Corp. v. American Laubscher Corp., 338 So.2d 1269 (Ala., 1976); Alabama Power Co. v. Tatum, 293 Ala. 500, 306 So.2d 251 (1975).
The judgment of the trial court is hereby affirmed.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, MADDOX, FAULKNER, EMBRY and BEATTY, JJ., concur.
JONES, J., dissents.
SHORES, J., not sitting.
JONES, Justice (dissenting):
I respectfully dissent.
This Court is committed, and rightly so, to a rather liberal policy in setting the outer limits for permissible jury argument. The art of advocacy is very much alive in our jurisdiction, and this is to be encouraged rather than curbed. While counsel's right, in the practice of the art of jury persuasion, to draw upon the literary classics and the folklore of our culture may have become less stylish as a practical matter, the exercise of this right is just as legally permissible today as ever in our history. Indeed, counsel has the right to argue the foolish, even the ridiculous, for, surely, the wisdom of the argument constitutes no element in the test of its legal propriety. See, for example, R. C. Bottling Company v. Sorrells, 290 Ala. 187, 275 So.2d 131 (1973).
But all of this assumes, where there is an objection and where substantial prejudice would otherwise result, that there is some evidentiary basis for the argued inferences and conclusions. In the instant case, the possibility that something could have happened beyond the defendant's control is no evidentiary basis for the argument "that this boy either had a heart attack or was dead when this car crossed that center line. . . ." This argument supplied facts and, in my opinion, was not an argument of an inference based on facts in evidence. Clearly, it seems to me, if the jury based its verdict on the fact that the defendant had a heart attack, its verdict is unsupported by the evidence.
The majority opinion concludes its rationale:
"In view of the court's instruction, we do not believe the argument was prejudicial under these facts."
This, in my opinion, is a misapplication of the "eradicability of error" Rule. I have found no cases where this Rule was applied in the context of a ruling adverse to the objecting party. In other words, the application of this Rule assumes prejudicial error, and it is only by sustaining the objection, followed by appropriate instructions, that the error is eradicated. Here, the Court overruled the objection. In this context I do not understand how the Court's instruction, which followed his ruling, could have corrected any assumed error. Indeed, the trial Judge cannot cure that which he has assumed was not error in the first instance. It is my opinion that there is no field of operation for the "eradicability of error" Rule in the instant case.