The plaintiff sued for the wrongful death of his minor daughter who sustained fatal injuries when the driver of the car in which she was riding fell asleep. The plaintiff appeals from a jury verdict and judgment in favor of the defendant. We affirm.
Appellant claims that the trial judge erred as follows: (1) admitting the plaintiff's deposition which contained immaterial, irrelevant and prejudicial testimony; (2) allowing defense counsel to improperly allude to criminal proceedings during closing argument; (3) allowing the results of a blood test for intoxication; and (4) refusing to grant the plaintiff a new trial on the ground that the verdict was against the preponderance of the evidence.
Appellant asserts it was reversible error to allow the defendant to read into evidence parts of the plaintiff's deposition containing irrelevant evidence prejudicing the jury against the plaintiff. More specifically, this evidence included the facts that the plaintiff had two other children besides the deceased, that the deceased had been going steady with another passenger in the car for two years, that the plaintiff owned a *Page 1337 
restaurant/pub, that the plaintiff did not know his daughter was going to a nightclub on the night of her death, and that the plaintiff had never contacted the owners of the nightclub which the deceased had visited immediately prior to the accident.
A party who fails to object to matters at the trial level may not raise these matters for the first time as the basis for an appeal. An objection must be made and a ground stated therefor or the objection and error are deemed to have been waived.Callahan v. Weiland, 291 Ala. 183, 279 So.2d 451 (1973);Colburn v. Mid-State Homes, Inc., 289 Ala. 255, 266 So.2d 865
(1972); Hoefer v. Snellgrove, 288 Ala. 407, 261 So.2d 431
(1972). Appellant has failed to make timely objection to those questions eliciting the facts that plaintiff had two other children besides the deceased and that the plaintiff did not know the deceased was going to the nightclub. Therefore, these matters may not be raised on appeal.
The overruling of objections to questions concerning matters already received into evidence without objection, is not reversible error. Watson v. McGee, 348 So.2d 461 (Ala. 1977);Coker v. Ryder Truck Lines, 287 Ala. 150, 249 So.2d 810 (1971);T.L. Farrow Mercantile Co. v. Davidson, 200 Ala. 671, 77 So. 45
(1917). The record is clear, that the jury heard, without objection, that the plaintiff owns a restaurant/pub and also that the deceased had gone steady for two years with her boy friend.
Of the five facts received in evidence, only that stating that the plaintiff had never contacted the owners of the nightclub remains for us to consider. The trial court found this fact to be relevant to the issues presented. We conclude that questions as to the relevancy of testimony is a matter ordinarily within the discretion of the trial court, and unless such discretion has been grossly abused, it will not be considered error on appeal. Harper v. Baptist MedicalCenter-Princeton, 341 So.2d 133 (Ala. 1976); Roan v. Smith,272 Ala. 538, 133 So.2d 224 (1961); Occidental Life Ins. Co. ofCal. v. Nichols, 266 Ala. 521, 97 So.2d 879 (1957). We cannot say that the trial court has abused its discretion.
The next issue for our consideration is appellant's objection to the following excerpt from appellee's closing argument to the jury. It was as follows:
 That's not — they have a criminal side of this court. There's criminal proceedings, you know, where people aren't just fined. They're put in jail and, yeah, they are punished. [Emphasis added.]
Appellant contends that this language, when used in a wrongful death case, was so prejudicial as to constitute reversible error.
Rule 45, ARAP, allows for the reversal of a jury verdict where there has been an erroneous lower court ruling, only if that ruling resulted in a substantial injury to the plaintiff. We fail to find such substantial injury due to the fact that the appellee's mention of criminal proceedings in his closing argument was reply in kind to appellant's mention of criminal proceedings to the jury panel. Since the appellant previously placed the notion of criminal proceedings before the jury, it was harmless error when appellee alluded to criminal proceedings in his closing argument. Moreover this argument was reply in kind.
Appellant's next contention is that it was error to admit the results of a chemical test for intoxication. He asserts in brief that "Police Officer Larry Hearn, was allowed on cross-examination to testify to the results of a photoelectric intoximeter test (P.E.I.) performed on a blood sample of the defendant."
From a close reading of the record we find that Officer Hearn did, indeed, mention a P.E.I. test. He mentioned this test in the context that he thought the appellee had been drinking and he told the appellee he was going to have a P.E.I. test given to him. Presumably that kind of test was never given because later in Officer Hearn's testimony he said a blood test was performed. A blood test for intoxication and a P.E.I. test for intoxication are entirely different tests. Officer Hearn was permitted to testify over objection that the *Page 1338 
blood test results were negative. At this point in the record we think error was present. However, this is not all of the evidence regarding the admissibility of the results of the blood test.
Later in the trial, James L. Small, a state toxicologist, was called as a witness for the defense. After proper qualification as an expert he was permitted to testify that under his supervision a "gas chromatography test" was performed on a sample of appellee's blood. This test produced negative results. There were several objections by appellant's counsel to the admission of this testimony; however, none of the objections went to the point raised on appeal.
On appeal it is argued that the blood test results were admitted contrary to Code 1975, § 32-5-193 (b), and Patton v.City of Decatur, 337 So.2d 321 (Ala. 1976). The above statute provides that chemical analysis of a person's blood to be considered valid shall have been performed according to methods approved by the State Board of Health and by an individual possessing a valid permit issued by the State Board of Health. We agree with counsel that the test results were admitted without showing these conditions precedent. But we must conclude from the record that a proper objection was not made at trial raising this point. Appellate courts reverse only for adverse rulings in the trial court. We are of the opinion that the later admission of this evidence cured the earlier improper admission.
The final question presented to this Court is: whether the trial court erred in failing to grant a new trial on the ground that a preponderance of the evidence was against the verdict.
The scope of appellate review regarding the granting of a new trial for insufficient evidence is set out in Walker v.Cardwell, 348 So.2d 1049, 1051 (Ala. 1977) (quoting from Hodges Company v. Albrecht, 288 Ala. 281, 285-86, 259 So.2d 829, 832
(1972)), which stated:
 "`* * * It is the rule that where the verdict is contrary to the great preponderance of the evidence, defendant, on due motion, is entitled to a new trial, though the court was not in error in declining the affirmative charge. The scintilla of evidence rule does not apply as to the ruling on the motion. . . .
"However, we also point out that,
 "`* * * This court has held many times that verdicts are presumed to be correct and no ground of a motion for a new trial is more carefully scrutinized than that the verdict is against the weight of the evidence. . . . Furthermore, verdicts are presumed correct and the presumption in favor of the correctness of the verdict is strengthened when a new trial is denied by the court. . . . Furthermore, on appeal from a judgment for the plaintiff this court must review the tendencies of the evidence most favorable to the plaintiff allowing such inferences as the jury was free to draw. . . .'
"Moreover, this court has held that,
 "`* * * "the decision of the trial court, refusing to grant a new trial on the ground of the insufficiency of the new evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust."' . . ."
For the appellee to be held liable, it must be shown that he acted in a wanton manner resulting in the death of plaintiff's intestate, thereby satisfying the requirements of Alabama's guest statute. Code 1975, § 32-1-2.
In Lankford v. Mong, 283 Ala. 24, 214 So.2d 301 (1968), the elements making up wanton misconduct where a driver goes to sleep at the wheel and a guest passenger is killed or injured were presented.
 A driver of an automobile is not guilty of wanton or wilful misconduct in falling asleep while driving unless it appears that he continued to drive in reckless disregard of premonitory symptoms. *Page 1339 
Generally speaking, if it appears that the driver of an automobile has been without sleep for a considerable period of time and has experienced symptoms of the approach of sleep, the fact that he continues to drive under such circumstances has been held to manifest a wilful and wanton disregard for the safety of others within the meaning of the applicable guest statute. * * *
283 Ala. at 26-27, 214 So.2d at 303.
In this case the evidence shows that on Friday, January 14, 1977, the appellee, David Miller, had the day off from his job as a construction worker. He had gotten seven and one-half hours of sleep the evening before and for the three preceding days he had no more than five hours of sleep each night. The appellee spent Friday with his friend Mike Millican working on motorcycles. That night the appellee with his girl friend, Marcia Monk, and Mike Millican with his girl friend, Chris Costarides, went in appellee's car on a double date. The four had double dated many times before. The group eventually decided to go to a disco called the Showboat. They arrived at 9:15 p.m. Each of the four had something to drink, the appellee having two vodka Collinses and a pina collada. At 10:45 p.m., the appellee and Marcia Monk went to McDonald's for something to eat while Chris Costarides and Mike Millican stayed at the Showboat. The appellee drove his 1973 Ford Mustang to a McDonald's located in downtown Mobile. While there the appellee mentioned that he was tired. Marcia Monk offered to drive his car back to the Showboat, which she did. The four then left the Showboat to return home with the appellee driving. The offer of Chris Costarides that she drive the car was turned down by the appellee. The other passengers fell asleep on the return trip. The appellee got warm twice and opened the window each time to let in some cold air. Appellee remembers getting off Interstate 65 onto Highway 90. At the intersection of Highway 90 and Butler Drive the appellee dozed off. The car left the road striking a light pole.
Based on the above facts and using the standard of review set forth in Walker, supra, this case was one for the jury to evaluate. It is a jury question whether the defendant knowingly acted in a manner that manifested a wanton disregard for the safety of his passengers and their decision shall not be disturbed.
For the reasons noted above, the judgment of the trial court is due to be affirmed.
AFFIRMED.
BLOODWORTH, FAULKNER, JONES and EMBRY, JJ., concur.