MADDOX, Justice.
This case presents an issue of the validity of a widow’s purported waiver of her right to an elective share of her deceased husband’s estate, and of her homestead and exempt property allowances.
Mr. Barney Garrard died testate on November 28, 1984, in Marion County, Alabama. His will, executed October 29, 1982, provided, in part, as follows:
“ITEM TWO: I hereby acknowledge that at the time of the making of this my Last Will and Testament, I am married to Lela Garrard ..., but that we have been separated, living apart from each other, since 1955. I do hereby give, devise and be *558 queath unto my said wife, Lela Garrard, the sum of $10.00 as her entire share of my estate.
“ITEM THREE: I hereby acknowledge that at the time of the making of this my Last Will and Testament, I have two (2) sons, namely, Arvil Ray Garrard ..., and James Odis Garrard_ Unto each of them, or their issue per stirpes, I do hereby give, devise and bequeath the sum of $10.00.
“ITEM FOUR: All the rest, residue and remainder of my estate, whether real, personal or mixed of every kind and nature whatsoever and wherever situated, I do hereby give, devise and bequeath unto Virgle Odis Lang and Annie Lois Lang, or their issue, per stirpes.
“ITEM FIVE: I hereby nominate, constitute and appoint Virgle Odis Lang, as Executor of this my Last Will and Testament and direct that he shall serve without necessity of posting bond or accounting for his action in any Court.”
As executor, Virgle Odis Lang, Garrard’s nephew, distributed the assets of the estate as follows: $10.00 to Lela Garrard; $10.00 to Arvil Ray Garrard; $10.00 to James Odis Garrard; $316.00 to Bedford, Bedford & Rogers, Attorneys; $6,842.34 to Virgle Odis Lang; and, $6,842.33 to Annie Lois Lang. After the above distributions, the estate had a balance of zero. On the same day that he made the above distributions, however, Lang also drew upon his personal account checks in the following amounts: $2,000.00 to James Odis Garrard; $1,000.00 to Arvil Ray Garrard; and $1,000.00 to Lela Garrard. Ms. Garrard and her two sons accepted the checks and indorsed and cashed them.
Subsequently, upon Ms. Garrard’s motion, the administration of the estate was removed to the circuit court, where Ms. Garrard requested that the court “assign to her all of the lawful interest she does have as surviving spouse of the said Barney Garrard, which said interest includes, but is not limited to, homestead allowance, surviving spouse’s elective share of decedent’s estate, exempt property, family allowance, and any other rights which she, as surviving spouse, may have in and to the estate of Barney Garrard, deceased.” After a trial, the circuit court found, “[u]pon full and fair consideration of the pleadings of record, oral testimony and exhibits offered in the trial of this cause,” that “Lela Garrard, as surviving spouse of Barney Garrard, has no widow’s elective share, homestead allowance, exempt property or family allowance in and to the estate of Barney Garrard, deceased.” The circuit court denied her petition and Ms. Garrard now appeals to this Court.
The instant marriage was not an example of connubial bliss; certain trial testimony and the fact that the decedent and Ms. Garrard had lived apart for 29 years shows the opposite. However, decedent’s will acknowledges Ms. Garrard as his spouse, the parties implicitly concede that Ms. Garrard is decedent’s surviving spouse, and according to Code 1975, § 43-8-252 (1982 repl. vol.), which provides the applicable statutory definition,[1] Ms. Garrard is decedent’s “surviving spouse.”
As decedent’s surviving spouse, Ms. Gar-rard has a right of election, § 43-8-70; and she may claim a homestead allowance, § 43-8-110; an exempt property allowance, § 43-8-111; and a family allowance, § 43-8-112. The surviving spouse, however, may lose the right to elect or claim these allowances by bar, waiver, or relinquishment. See Code 1975, § 43-8-72 (1982 repl. vol.); and, generally, 34 C.J.S. Executors and Administrators §§ 340-345 (1942).
Defendant executor argues that Ms. Gar-rard waived these statutory rights by accepting and indorsing the estate’s check in the amount of $10.00 and the executor’s personal check in the amount of $1,000.00. The only issue before this Court, therefore, is whether Ms. Garrard, by accepting and *559 indorsing these checks, waived her statutory right of election and her homestead and exempt property allowances.[2]
Ms. Garrard argues that Code 1975, § 43-8-72 (1982 repl. vol.) is controlling. Section 43-8-72 reads as follows:
“The right of election of a surviving spouse and the rights of the surviving spouse to homestead allowance, exempt property and family allowance, or any of them, may be waived, wholly or partially, before or after marriage, by a written contract, agreement, or a waiver signed by the party waiving after fair disclosure. Unless it provides to the contrary, a waiver of ‘all rights’ (or equivalent language) in the property or estate of a present or prospective spouse or a complete property settlement entered into after or in anticipation of separation or divorce is a waiver of all rights to elective share, homestead allowance, exempt property and family allowance by each spouse in the property of the other at death and a renunciation by each of all benefits which would otherwise pass to him from the other by intestate succession or by virtue of the provisions of any will executed before the waiver or property settlement.”
Ms. Garrard candidly points out that § 43-8-72 might be construed as applying only to ante-nuptial and post-nuptial agreements, i.e., not to post-death agreements made between the surviving spouse and the executor or others.
It does appear that Alabama law, prior to the adoption of the new probate code, which is patterned after the Uniform Probate Code, made a distinction between a wife’s relinquishment of her inchoate right to dower and a widow’s vested right to dower whether pre- or post-allotment. Code 1940, Title 34, § 46, obviously applying only to agreements concerning an inchoate right of dower, provided:
“The wife, if of the age of eighteen years, may relinquish her right to a dower in land, by joining with her husband in a conveyance thereof, or by joining with her husband in a power of attorney authorizing the attorney to convey the lands, or subsequently to a conveyance thereof by the husband, by a deed of conveyance or other separate instrument executed by her alone; and in either case her signature must be witnessed or acknowledged in the manner prescribed by this Code for the attestation or acknowledgment of other conveyances.”
The Code contained no similar provision for agreements concerning vested dower rights.
Recognizing the statute’s restricted application, this Court, in Decker v. Decker, 253 Ala. 345, 348, 44 So.2d 435, 437 (1950), opined:
“[Code 1940, Title 34, § 46] relates to the relinquishment of right of dower by the wife, not widow, prescribing that she join with her husband in a conveyance thereof, or that, subsequently she alone execute a conveyance or other instrument so conveying her right, and requiring that her signature to any such conveyance or instrument be attested or acknowledged. These requirements are designed for the protection of the wife’s inchoate right of dower. The instrument here involved is, in effect, an assignment of dower after the death of the husband but before its allotment.”
However, the opinion continues:
“So, treating the agreement as an assignment or relinquishment of her dower right to the heirs, its validity is to be tested by its substance rather than its form. That is to say, it will be upheld, in equity, if it is supported by a valuable consideration and was not the result of fraud, imposition, or undue advantage perpetrated in its procurement.... In determination of these questions we look to the instrument itself and to the situation of the respective parties as it appears from the evidence.” 253 Ala. at 348-49, 44 So.2d at 437. (Citations omitted.) (Emphasis added.)
*560 In order to validly waive a vested dower right, a widow must execute an agreement which is “supported by a valuable consideration” and which is not the result of “fraud, imposition, or undue advantage.” Id. It seems, therefore, that whether the agreement was a relinquishment of inchoate dower rights by a wife or a relinquishment of vested dower rights by a widow, the inquiry was still the same: Was it supported by a valuable consideration and was it the result of fraud, imposition, or undue advantage? Thus, although statutory law concerned only a wife’s relinquishment agreement, as to any distinction between a wife’s and a widow’s relinquishment agreement implied by the statute’s narrow application, the common law of this state made that distinction a distinction without substance.
Section 48-8-72 is, of course, the present equivalent of Code 1940, Title 34, § 46. The Commentary to § 43-8-72 notes that “[p]rior Alabama law was essentially identical to this section” in requiring “adequate consideration” or “full disclosure and knowledge of the value of the estate.”[3] Whether the validity of the instant waiver is tested under Section 43-8-72, or under the common law, which applies in the absence of an applicable statute,[4] the executor has the burden, King v. Reid, 455 So.2d 7, 9 (Ala.1984), of showing that the waiver was made after fair disclosure. We now ask if the executor, here, has shown a fair disclosure.
At trial, the executor testified as follows:
“Q. Let me show you what I’m now marking for identification as petitioner’s exhibit 4. That appears to be three Xerox copies of three different checks number 1385, 1386, and 1387, all appearing to be drawn upon the account of Yirgle Lang on December 21, 1984. Now the first check ... appears to be payable to James Odis Garrard for $2000.
“A. That’s right.
“Q. The second one, 1386 payable to Ar-vil Ray Garrard for $1000.
“A. That’s right.
“Q. And the third one, check number 1387 payable to Lela Garrard for $1000?
“A. That’s right.
“Q. Now you have paid these from your own account?
“A. That’s right. '
“Q. To the widow Lela Garrard and to Mr. Garrard’s children?
“A. Yes, sir.
“Q. And, of course, you’re here today saying you’re entitled to a credit for having paid those?
(C * * * *
“A. Yes, it was. They agreed with me that they would be satisfied with it and they have signed the checks and cashed them.
“Q. Is there anything else in writing between you or James Odis Garrard or Arvil Ray Garrard and Lela Garrard other than the checks right here?
“A. No, sir.
{( * * * *
“Q. Now, just tell the court in your own words how it was that you came to give them monies in excess of what was provided for them in the will? Tell us the conversation you had with them and what was done.
“A. Well, it was just to keep peace and love among the family, what I was hoping it would do, that was the main motive for doing it and they think I agreed to give them more than that but the fact *561 was that’s all I got is the $6,800 and I did divide that whtim [sic, with them] just like I told them I would.
“Q. Tell us about the conversation that occurred at the time you gave them the checks.
“A. Well, first, they wasn’t satisfied but then they decided later that if I wanted to give them that that would be satisfactory and they said that would be all right.
“Q. And you gave that to them in satisfaction of their claims against the estate.
“A. That’s right, in satisfaction that everything would be all right.
“Q. And they indorsed those checks and cashed them, didn’t they?
“A. They did.”
Ms. Garrard testified as follows:
“Q. Now, did you understand when you received that check from Mr. Lang — did you know what your rights were as a surviving spouse to your husband?
“A. Well, I taken it but I was [his] wife, I was supposed to get it all.
“Q. Had you at that time seen or consulted a lawyer? Did you know what you were legally entitled to?
“A. I hadn’t talked to the lawyer.
“Q. Did you sign anything agreeing anywhere in writing saying that $1,000 was being accepted by you in full settlement of any rights you as surviving spouse had under the estate?
“A. No, sir.
<<****
“Q. Now, you knew at the time you cashed this check for $1000 that $10 was all the will had left you, didn’t you?
“A. Yes, sir.
“Q. So you knew this was more money than you were given in the will, didn’t you?
“A. Yes, sir.
“Q. You got one check for $10 and you got another check for $1000?
“A. Yes, sir.
“Q. What did you think the $1000 was for?
“A. Well, I thought that was part of his money.
“Q. Well you knew the will said $10 and there was one check for that?
“A. Yes, sir.
“Q. What did you think the $1000 was for?
“A. Well, I didn’t know but I knew it was due me.
“Q. You knew Mr. Lang was giving you that in settlement, didn’t you?
“A. Well, I didn’t settle with Mr. Lang.
“Q. Did you know your boys got money too? They were left $10 in the will, weren’t they?
“A. That’s the way he had it wrote out.”
The testimony above makes it apparent that there was some agreement between the executor and the family (although it is not clear if Ms. Garrard was present when the agreement was made). But, nowhere in the executor’s testimony or in Ms. Garrard’s testimony is it reflected that she was advised of her right to elect against the will and of the consequences of not exercising that right.
Furthermore, aside from the testimony, the checks indorsed and accepted by Ms. Garrard do not provide any evidence of an agreement to waive her statutory allowances and right of election, because “[s]he will not be barred unless the instrument executed by her clearly shows an intention to release these statutory rights, and any uncertainty in the language of the instrument will be resolved in [her] favor.” 34 C.J.S., supra, at § 345. Here, of course, there is no “language” in the instrument.
Nor does the bare act of Ms. Garrard’s acceptance and indorsement constitute evidence of a sufficient waiver. In Merchants’ National Bank of Mobile v. Hubbard, 222 Ala. 518, 525, 133 So. 723, 729 (1931), this Court observed:
“[Authorities agree that to constitute an election ‘the acts and declarations relied upon be unequivocal, and must clearly evince an intention to elect and take under the will, and the choice must be made *562 by the widow, with her full knowledge of her rights and the status of the estate’....”
Although the executor argues that Ms. Garrard's acceptance and endorsement of the checks evinces her election to take under the will and be satisfied with this “settlement,” her actions may be interpreted just as easily as indicating a “simple-minded ignorance of what her rights in fact were.” Richter v. Richter, 180 Ala. 218, 230, 60 So. 880, 884-85 (1913).
We are constrained to hold, therefore, that the executor has not carried his burden of showing that Ms. Garrard was fully advised of her right to elect against the will and to take her elective share and her homestead and exempt property allowances.
We recognize that the executor probably acted in good faith in arranging the settlement, and we feel that this probably influenced the trial court in ruling as it did. Yet, however pure the executor’s motives, either by statute, § 43-8-72, or by common law, he still must show that the proposed waiver was made after full disclosure. This he has not done.
In light of the lack of evidence of any disclosure, we conclude that the trial court plainly and palpably abused its discretion in finding that Ms. Garrard had waived her statutory rights. We reverse the judgment of the trial court and remand the cause for a determination of the appropriate elective share and homestead and exempt allowances due Ms. Garrard.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.

. Although decedent’s will was executed on October 29, 1982, prior to the effective date of Alabama’s new probate code (January 1, 1983), the probate code controls this case by virtue of Code 1975, § 43-8-8 (1982 repl. vol.).

. On appeal, Ms. Garrard concedes that she is not entitled to a family allowance.

. Of course, the inquiry under prior Alabama law, both statutory law (i.e., Code 1940, Title 34, § 46, and its equivalent preceding and succeeding statutes) and common law, was whether a waiver was the result of "fraud, imposition, or undue advantage,” and the present inquiry under § 43-8-72 is whether there is "fair disclosure." The inquiries, however, are one and the same, because “[a]n unadvised election is upon the same basis as an election procured by fraud.” Merchants' National Bank of Mobile v. Hubbard, 222 Ala. 518, 525, 133 So. 723, 729 (1931).

. Section 43-8-3 (part of the new probate code) provides that "[u]nless displaced by the particular provisions of this chapter [i.e., the probate code], the principles of law and equity supplement its provisions.”